[No. A032610. First Dist., Div. Five. May 21, 1986.]

PLANNED PARENTHOOD AFFILIATES OF CALIFORNIA et al.,
Petitioners, v.
JOHN K. VAN DE KAMP,
as Attorney General, etc., et al., Respondents.

254

**COUNSEL**

Abigail English, Margaret C. Crosby, Alan L. Schlosser and Edward M. Chen for Petitioners.

Richard R. Sheridan, Catherine I. Hanson, David E. Willett and Hassard, Bonnington, Rogers & Huber as Amici Curiae on behalf of Petitioners.

John K. Van de Kamp, Attorney General, Janet G. Bangle, Michael T. Garcia and James Ching, Deputy Attorneys General, for Respondents.

**OPINION**

LOW, P. J.—California's Child Abuse Reporting Law (Pen. Code, § 11165 et seq.) is designed to combat child neglect and the physical, emotional and sexual victimization of children. The law requires health care, educational, and other professionals to report known or suspected instances of child abuse to law enforcement or other governmental agencies. Failure to report may be punished as a misdemeanor. After investigation, substantiated reports are transmitted to the Department of Justice and lodged in a statewide computer data bank. We must decide whether the law requires a professional, who has no knowledge or suspicion of actual abuse, to nevertheless report a minor as a child abuse victim solely because the minor is under the age of 14 and has indicated that he or she engages in voluntary, consensual sexual activity with another minor of similar age. We hold the reporting law imposes no such requirement.

By this petition for writ of mandate, petitioners challenge a 1984 opinion of the Attorney General which applies the reporting law to all sexual activity

of minors under 14, without regard to whether the minor is the victim of child abuse or is engaging in voluntary sexual conduct. Petitioners contend the Legislature did not intend to include such conduct within the ambit of the reporting law, particularly since the Legislature has established a right to confidential reproductive health care for minors under 14. Petitioners further argue that if the Legislature did intend voluntary conduct to be reported, the requirement would violate two aspects of the minors' right to privacy guaranteed by the California Constitution. The reporting requirement would violate the substantive right of sexual privacy by unduly burdening the minors' rights to make reproductive health care decisions, and it would violate the right to informational privacy by disclosing intimate medical information to the state for placement in a permanent computer file.

We issued a stay order in light of the sensitive privacy issues raised by the petition, and because the reporting provisions put health care professionals to the "Hobson's choice" between violating nonabused patients' confidentiality by reporting their sexual conduct to the state, or suffering criminal prosecution for failure to make a report. Because of the statewide impact of the reporting provision, we gave our stay order statewide effect pending our resolution of the serious matters raised by the petition. Our stay order in no way interfered with enforcement of the reporting requirement with regard to actual child abuse, whether physical, emotional, sexual, or conduct amounting to child neglect. We issued the alternative writ and heard oral argument. The peremptory writ of mandate is granted.

I

A

Petitioners are Planned Parenthood Affiliates of California (Planned Parenthood), a nonprofit corporation and the parent group of the 16 local California Planned Parenthood agencies; Dr. Ben Major, M.D., an Alameda County obstetrician/gynecologist whose patients include minors under 14; and Dr. Sadja Goldsmith Greenwood, M.D. Planned Parenthood provides reproductive health care services and offers such services to persons under 14. Planned Parenthood asserts its own interests in the availability of confidential reproductive health care to under-14 minors, and also asserts the interests of its minor clients. It has standing to do both. (*Central Valley Chap. 7th Step Foundation* v. *Younger* (1979) 95 Cal.App.3d 212, 233 [157 Cal.Rptr. 117].) Dr. Major asserts his own rights as a physician caught between the obligations imposed by the Attorney General's interpretation of the reporting law, and his ethical obligations to provide confidential health care to minors who are engaging in nonabusive, voluntary sexual activity. Dr. Major further asserts his patients' rights to confidential health

care and sexual privacy. He too has standing in both areas. (*Ballard* v. *Anderson* (1971) 4 Cal.3d 873, 877 [95 Cal.Rptr. 1, 484 P.2d 1345, 42 A.L.R.3d 1392]; see *Committee to Defend Reproductive Rights* v. *Myers* (1981) 29 Cal.3d 252 [172 Cal.Rptr. 866, 625 P.2d 779, 20 A.L.R.4th 1118].) Dr. Greenwood is a California taxpayer seeking to enjoin the expenditure of public monies in the enforcement of an invalid law; she has the necessary beneficial interest in the issuance of a writ of mandate. (*Hollman* v. *Warren* (1948) 32 Cal.2d 351 [196 P.2d 562].) In addition, all petitioners assert a beneficial interest as citizens concerned for the proper performance of a public duty in an area of general public interest. (*Green* v. *Obledo* (1981) 29 Cal.3d 126, 144-145 [172 Cal.Rptr. 206, 624 P.2d 256]; *American Friends Service Committee* v. *Procunier* (1973) 33 Cal.App.3d 252, 255-256 [109 Cal.Rptr. 22].)

Respondents are the Attorney General and the Alameda County District Attorney in their official capacities as officers charged with the enforcement of the child abuse reporting law. The Attorney General has a major role in enforcing and implementing the law's provisions. He directs and controls the Department of Justice, and is responsible for maintaining the statewide data bank of child abuse reports and with disseminating information from that bank to local law enforcement agencies investigating child abuse. As the chief law enforcement officer of the state, the Attorney General has general enforcement power with respect to the penal sanction for nonreporting suspected abuse.

The District Attorney has the responsibility for local enforcement of the reporting law's penal provision. He is empowered to prosecute a professional who fails to report consensual sexual behavior as child abuse, and is named as a representative of all California district attorneys. The naming of a local official as representative of all counterparts statewide is a recognized procedure. (See *Brosnahan* v. *Brown* (1982) 32 Cal.3d 236 [186 Cal.Rptr. 30, 651 P.2d 274]; see also *Ramirez* v. *Brown* (1973) 9 Cal.3d 199 [107 Cal.Rptr. 137, 507 P.2d 1345], revd. *sub nom. Richardson* v. *Ramirez* (1974) 418 U.S. 24 [41 L.Ed.2d 551, 94 S.Ct. 2655].) There has been no timely objection to that procedure in this case.

B

 The child abuse reporting law (hereafter usually reporting law), Penal Code section 11165 et seq.,[1] was enacted in 1981 as a substantive

---

[1] All statutory references are to the Penal Code unless otherwise indicated by express citation or the context of discussion.

revision of earlier reporting schemes.[2] The law is designed to bring the child abuser to justice and to protect the innocent and powerless abuse victim. (See Comment, *Reporting Child Abuse: When Moral Obligations Fail* (1983) 15 Pacific L.J. 189.) The reporting law imposes a mandatory reporting requirement on individuals whose professions bring them into contact with children. (*Id.*, at pp. 189-190.) Physical abuse, sexual abuse, willful cruelty, unlawful corporal punishment and neglect must be reported. (§ 11165, subds. (b)-(g).) "Sexual abuse" consists of "sexual assault" on the minor, defined as conduct in violation of one or more of the following sections: 261 and 264.1 (rape and rape in concert); 285 (incest); 286 (sodomy); subdivisions (a) or (b) of 288 (lewd & lascivious acts upon a minor under 14); 288a (oral copulation); 289 (rape by instrument); and 647a (child molestation). (§ 11165, subd. (b)(1).)[3]

The reporting law applies to three broadly defined groups of professionals: "health practitioners," child care custodians, and employees of a child protective agency. "Health practitioners" is a broad category subdivided into "medical" and "nonmedical" practitioners, and encompasses a wide variety of healing professionals, including physicians, nurses, and family and child counselors. (§§ 11165, subds. (i), (j); 11165.2.) "Child care custodians" include teachers, day care workers, and a variety of public health and educational professionals. (§§ 11165, subd. (h); 11165.1 [first of two identically numbered sections]; 11165.5.) Employees of "child protective agencies" consist of police and sheriff's officers, welfare department employees and county probation officers. (§ 11165, subd. (k).)

The Legislature acknowledged the need to distinguish between instances of abuse and those of legitimate parental control. "[T]he Legislature recognizes that the reporting of child abuse . . . involves a delicate balance between the right of parents to control and raise their own children by imposing reasonable discipline and the social interest in the protection and safety of the child. . . . [I]t is the intent of the Legislature to require the reporting of child abuse which is of a serious nature and is not conduct which constitutes reasonable parental discipline." (Stats. 1980, ch. 1071, § 5, p. 3425.)

To strike the "delicate balance" between child protection and parental rights, the Legislature relies on the judgment and experience of the trained

---

[2]In the latter part of 1985, the Legislature enacted several measures amending various provisions of the reporting law and adding new ones. On March 14, 1986, we vacated submission to allow the parties to comment on the recent amendments and their effect, if any, on this case. Upon receipt of the parties' responses this matter was resubmitted. The amendments do not materially alter the provisions of the reporting law discussed in this opinion.

[3]The definition of "sexual abuse" also includes provisions primarily directed at child pornography. (§ 11165, subd. (b)(2).)

professional to distinguish between abusive and nonabusive situations. "[A]ny child care custodian, medical practitioner, nonmedical practitioner, or employee of a child protective agency who has knowledge of or observes a child in his or her professional capacity or within the scope of his or her employment *whom he or she knows or reasonably suspects has been the victim of child abuse* shall report the known or suspected instance of child abuse to a child protective agency . . . . '[R]easonable suspicion' means that it is objectively reasonable for a person to entertain such a suspicion, based upon facts that could cause a reasonable person in a like position, *drawing when appropriate on his or her training and experience,* to suspect child abuse." (§ 11166, subd. (a), italics added.) As one commentator has observed, "[t]he occupational categories . . . are presumed to be uniquely qualified to make informed judgments when suspected abuse is not blatant." (See Comment, *Reporting Child Abuse: When Moral Obligations Fail, supra,* 15 Pacific L.J. at p. 214, fn. omitted.)[4]

The mandatory child abuse report must be made to a "child protective agency," i.e., a police or sheriff's department or a county probation or welfare department. The professional must make the report "immediately or as soon as practically possible by telephone." The professional then has 36 hours in which to prepare and transmit to the agency a written report, using a form supplied by the Department of Justice. The telephone and the written reports must include the name of the minor, his or her present location, and the information that led the reporter to suspect child abuse. (§§ 11166, subd. (a); 11167, subd. (a); 11168.) Failure to make a required report is a misdemeanor, carrying a maximum punishment of six months in jail and a $1,000 fine. (§ 11172, subd. (e).)

The child protective agency receiving the initial report must share the report with all its counterpart child protective agencies by means of a system of cross-reporting. An initial report to a probation or welfare department is shared with the local police or sheriff's department, and vice versa. Reports are cross-reported in almost all cases to the office of the district attorney. (§ 11166, subd. (g).) Initial reports are confidential, but may be disclosed to anyone involved with the current investigation and prosecution of the child abuse claim, including the district attorney who has requested notification of any information relevant to the reported instance of abuse. (§ 11167.5.)

A child protective agency receiving the initial child abuse report then conducts an investigation. The Legislature intends an investigation be con-

---

[4] The Legislature has enacted numerous provisions to ensure these occupational categories receive the necessary training in child abuse detection. (See. e.g.. Bus. & Prof. Code, §§ 28, 2089. 2091.)

ducted on every report received. The investigation should include a determination of the "person or persons apparently responsible for the abuse." (Stats. 1980, ch. 1071, § 5, pp. 3425-3426.) Once the child protective agency conducts an "active investigation" of a report and determines that it is "not unfounded," the agency must forward a written report to the Department of Justice, on forms provided by the department. (§§ 11168, 11169.) An "unfounded" report is one "which is determined by a child protective agency investigator to be false, to be inherently improbable, to involve an accidental injury, or not to constitute child abuse as defined in Section 11165." (§ 11165.6, subd. (c)(2).)

The Department of Justice retains the reports in a statewide index, a computerized data bank known as the "Child Abuse Central Registry," which is to be continually updated and "shall not contain any reports that are determined to be unfounded." (§ 11170, subd. (a).) If a child protective agency subsequently determines that a report is "unfounded," it must so inform the Department of Justice who shall remove the report from its files. (§ 11169.)

The reports in the registry are not public documents, but may be released to a number of individuals and government agencies. Principally, the information may be released to an investigator from the child protective agency currently investigating the reported case of actual or suspected abuse or to a district attorney who has requested notification of a suspected child abuse case. Past reports involving the same minor are also disclosable to the child protective agency and the district attorney involved or interested in a current report under investigation. In addition, future reports involving the same minor will cause release of all past reports to the investigating law enforcement agencies. (§§ 11167.5, subd. (b)(1); 11167, subd. (c); 11170, subd. (b)(1).)

Although the Legislature has authorized the Department of Justice to adopt rules governing recordkeeping and has declared that the department shall develop criteria to periodically purge registry entries (§ 11170, subd. (a); Stats. 1984, ch. 1613, No. 8 Deering's Adv. Legis. Service, § 5, p. 459), we are unaware of any regulations limiting the retention period of child abuse reports. Conceivably, the reports are subject to long-term retention in the state's computer files.

C

■ On June 1, 1984, the Attorney General interpreted the reporting law in a formal opinion. Volume 67 Ops.Cal.Atty.Gen. 235 (1984) was filed in response to an inquiry from the Los Angeles District Attorney, who inquired

whether a medical or nonmedical practitioner was required to make a child abuse report "when a child receives medical attention for a sexually transmitted disease, for birth control, for pregnancy or for abortion." (*Id.*, at p. 235.) The essence of the inquiry was whether these indicia of sexual *activity* necessitated a report on the grounds of sexual *abuse*.

The Attorney General concluded that with respect to minors over the age of 14, the mere fact of sexual activity would not necessitate a child abuse report. A report would be required only if "additional facts" pointed to sexual abuse. (*Id.*, at pp. 240-241.) The opinion implicitly recognizes that minors over 14 may voluntarily engage in sexual relations, and its reasoning tracks the reporting law's general approach to distinguishing between abusive and nonabusive situations. "[The] medical and healing arts professionals by reason of their training and experience are expected to identify actual or suspected child abuse." (*Id.*, at p. 238.) The mere fact of intercourse by the over-14 minor does not indicate sexual abuse unless, in the professional's judgment, additional facts indicate the minor is not engaging in voluntary sex but is the victim of abuse.

In the case of a minor under 14, however, the Attorney General's opinion concludes that indicia of past or present sexual activity ipso facto render the minor a child abuse victim. Departing from the norm of employing trained professional judgment to determine abuse on a case-by-case basis, the opinion in essence declares all minors under 14 who are sexually active to be child abuse victims. The conclusion is based on the Legislature's inclusion of section 288 in the definition of sexual assault embodied in section 11165, subdivision (b)(1).

■ Subdivision (a) of section 288 provides that "[a]ny person who shall willfully and lewdly commit any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of such person or of such child, shall be guilty of a felony."[5] Because the willing participation or "consent" of the child is no defense to the crime (*People* v. *Dontanville* (1970) 10 Cal.App.3d 783, 796 [89 Cal.Rptr. 172]), minors under 14 "cannot consent legally to any lewd or lascivious acts upon their persons, including sexual intercourse." (67 Ops.Cal.Atty.Gen., *supra*, at p. 238.) The Attorney General concluded that because of this inability to legally consent, the mere fact of intercourse alone triggered a reporting obligation even if the trained professional had

---

[5]Section 288, subdivision (b) proscribes lewd and lascivious conduct committed with force or violence; subdivision (c) directs judges and court officers to safeguard the psychological well being of the abuse victim.

no other grounds on which to base a reasonable suspicion of actual sexual abuse. If a minor sought prenatal care, abortion or treatment for a sexually transmitted disease, the fact of prior intercourse would be obvious. Under these circumstances, the medical and nonmedical practitioner would be obligated to report the minor as a victim of abuse, because the act of intercourse alone "raises a reasonable suspicion that some other person has engaged in lewd or lascivious acts with the child." (*Id.*, at p. 239.) The opinion reasons further that a request for birth control alone would not indicate prior sexual conduct, and thus would not trigger a reporting obligation: the request would only support an inference of "planned future sexual contact" and the reporting law "does not require the reporting of suspected future events." (*Ibid.*)

Since May 1985, the California Department of Health Services has conducted statewide training sessions for health care professionals governed by the reporting law. In reliance on the Attorney General's opinion, the department advises the professionals that they are legally obligated to make a report to a child protective agency whenever one of their under-14 clients indicates prior sexual contacts, even if in the professional judgment of the practitioner the child is engaging in sex voluntarily in a nonabusive situation.

## II

■ The Attorney General's opinion and its implementation led to this writ proceeding. By issuing the alternative writ, we conclusively established that petitioners could challenge the opinion by a petition for extraordinary writ. (*Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1, 7-8 [95 Cal.Rptr. 329, 485 P.2d 529]; *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 773 [87 Cal.Rptr. 839, 471 P.2d 487], cert. den. 403 U.S. 922 [29 L.Ed.2d 700, 91 S.Ct. 2225].) In this unusual writ proceeding, we explain why writ relief is available and appropriate.

■ A writ may issue to compel a nonjudicial officer to perform a legally mandated ministerial duty, and to do so properly in accordance with law. (See Cal. Civil Writs (Cont.Ed.Bar 1970) §§ 5.25-5.26, pp. 79-81 and authorities cited therein; *id.* (Cont.Ed.Bar Supp. 1985) §§ 5.25-5.26, pp. 45-46; 8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 70, pp. 709-710, §§ 75-77, pp. 714-717.) The official's duty to perform a mandatory ministerial duty in accordance with law embodies a corollary duty to *not* perform the duty in violation of law. The lawful exercise of the ministerial duty may be compelled; the unlawful exercise of the duty may be restrained. (8 Witkin, *op. cit. supra*, § 233 at pp. 856-858; *Miller* v. *Greiner* (1964) 60 Cal.2d 827 [36 Cal.Rptr. 737, 389 P.2d 129].) ■

Technically, however, a writ of prohibition will not lie to restrain a non-judicial act. (8 Witkin, *op. cit. supra,* § 39, at pp. 673-674; see *id.*, at pp. 856-858.) Mandate is therefore employed to restrain a public official from the unlawful performance of a duty; as so employed, the writ is known as "prohibitory mandate." (See *op. cit. supra,* at pp. 856-858; *Raley* v. *California Tahoe Regional Planning Agency* (1977) 68 Cal.App.3d 965 [137 Cal.Rptr. 699].)

Prohibitory mandate is typically invoked in two situations: where the official's conduct is in violation of a statutory ministerial duty, and where the performance of a statutory ministerial duty would violate the Constitution. The writ has issued to restrain an official from conducting an election in violation of statute. (See *Miller* v. *Greiner, supra,* 60 Cal.2d at pp. 830, 833-834.) Prohibitory mandate has also been used to restrain state officials from enforcing ministerial statutory provisions found to be unconstitutional. (See, e.g., *Hardie* v. *Eu* (1976) 18 Cal.3d 371 [134 Cal.Rptr. 201, 556 P.2d 301], cert. den. 430 U.S. 969 [52 L.Ed.2d 360, 97 S.Ct. 1652]; *Brosnahan* v. *Brown, supra,* 32 Cal.3d 236.) The writ has been repeatedly employed in sexual privacy cases to restrain the enforcement of unconstitutional provisions of law. (See, e.g., *Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d 252; *Planned Parenthood Affiliates* v. *Swoap* (1985) 173 Cal.App.3d 1187 [219 Cal.Rptr. 664]; *Committee to Defend Reproductive Rights* v. *Cory* (1982) 132 Cal.App.3d 852 [183 Cal.Rptr. 475].) ■ Since petitioners contend the Attorney General is enforcing the reporting law in a manner not intended or authorized by the Legislature and not permitted by the Constitution, they may avail themselves of prohibitory mandate.

The Attorney General argues that mandate is inappropriate because petitioners merely "disagree" with his opinion and this proceeding is only a forum for academic debate, not a live controversy. He urges that he has merely issued an opinion which has not been acted upon, so that the relief requested is anticipatory. We disagree.

This action is a live controversy. The Attorney General's opinion is not a mere "advisory" opinion, but a statement which, although not binding on the judiciary, must be "regarded as having a quasi judicial character and [is] entitled to great respect," and given great weight by the courts. (*People* v. *Shearer* (1866) 30 Cal. 645, 652; *Montessori Schoolhouse of Orange County, Inc.* v. *Department of Social Services* (1981) 120 Cal.App.3d 248, 259 [175 Cal.Rptr. 14].) The Attorney General's opinion has a real impact on minors and health professionals statewide. Reporting professionals must regard the authoritative opinion of the highest law enforcement officer of the state as having a definite impact on their duty to report certain conduct

as child abuse. Moreover, the state does not consider the opinion a mere exercise in academic interpretation. The state Department of Health Services is currently conducting statewide training of local family planning agencies, informing them of the requirement to report voluntary consensual conduct of under-14 minors in consonance with the Attorney General's opinion. The state Department of Social Services has issued a letter to all county welfare and probation departments of similar tenor. In sum, the criminal sanction for nonreporting consensual sexual behavior is very real, and the reporting requirement poses an immediate threat to confidential health care and sexual privacy rights on a statewide basis. ■ Writ relief is especially appropriate given the need for a prompt, authoritative resolution of the issues raised which touch upon daily matters of sexual privacy and the right to be free from unwarranted state collection of private information.[6]

■ We recognize that petitioners challenge not the reporting law itself but an interpretation of the law by the Attorney General. Prohibitory mandate is generally reserved for fact patterns showing present action which is unlawful, or a clear-cut statutory duty which falls afoul of the Constitution. To issue such a writ against only an interpretation of a law is one step far removed, and should be done sparingly, where the interests to be protected are significant and the translation of the interpretation into action is so clearly manifest that the interpretation is the law for all practical purposes. That is the situation which obtains in this case. "[M]andate does now clearly lie to compel performance of future acts where it is clear that public officers do not intend to comply with their obligation when the time for performance arrives." (*Knoll* v. *Davidson* (1974) 12 Cal.3d 335, 343, fn. 6 [116 Cal.Rptr. 97, 525 P.2d 1273].) By parity of reasoning, prohibitory mandate would lie to *restrain* a public officer who has indicated he or she will attempt to enforce an invalid law when the time arrives to do so, and in this case there has already been action taken to implement the Attorney General's opinion.

■ This matter is also appropriate for the exercise of the original jurisdiction of an appellate court. (See Cal. Constitution, art. VI, § 10; and Cal. Rules of Court, rule 56(a).) Given the need for prompt adjudication of a matter of important public interest and statewide impact, the exercise of an appellate court's, rather than a trial court's, power to issue a prerogative writ is appropriate. (See *MacPhail* v. *Court of Appeal* (1985) 39 Cal.3d

---

[6]Any doubts as to the reality of this controversy are dispelled by the acknowledged fact that a prosecution for nonreporting consensual behavior has already been commenced. In reliance on the Attorney General's opinion, the District Attorney of San Joaquin County initiated a "quasi-criminal" action for injunctive relief against a Stockton pregnancy clinic for failure to report the voluntary sexual activity of a 13-year-old minor.

454 [217 Cal.Rptr. 36, 703 P.2d 374]; *Brosnahan* v. *Brown, supra,* 32 Cal.3d 236; *California Educational Facilities Authority* v. *Priest* (1974) 12 Cal.3d 593 [116 Cal.Rptr. 361, 526 P.2d 513].) ▮ Likewise, this petition need not have been filed as an action for declaratory relief in the trial court. Mandate is necessary to obtain a prompt statewide resolution of serious constitutional questions, and is not precluded by the availability of declaratory relief. (*Glendale City Employees' Assn., Inc.* v. *City of Glendale* (1975) 15 Cal.3d 328, 343, fn. 20 [124 Cal.Rptr. 513, 540 P.2d 609], cert. den. 424 U.S. 943 [47 L.Ed.2d 349, 96 S.Ct. 1411].)

▮ Finally, petitioners have no adequate remedy at law. The shortcomings of an action for declaratory relief in a trial court have already been noted, and there is the additional time for appeal from an order adverse to petitioners. Similar disadvantages adhere to a "test" misdemeanor prosecution of a selected professional who refuses to report voluntary sexual conduct. Such a prosecution would take considerable time to traverse the avenues of trial and appellate review. Relief by writ of mandate from a Court of Appeal is substantially the only adequate way to provide the necessary prompt relief and certitude prayed for by petitioners. Every doctor, teacher, counselor or other reporting professional learning of a minor's voluntary sexual activity should know as soon as possible whether they face a reporting obligation. Petitioners should not be required to pursue their substantial constitutional questions through the avenue of misdemeanor conviction review or a superior court action for declaratory relief. ▮ ▮ ▮▮ (See *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 808-809 [114 Cal.Rptr. 577, 523 P.2d 617]; *San Gabriel Tribune* v. *Superior Court* (1983) 143 Cal.App.3d 762, 770 [192 Cal.Rptr. 415].)[7]

### III

Petitioners argue that by including section 288 among the sex offenses triggering a reporting requirement, the Legislature sought only to combat actual child abuse and did not intend to require reporting of the voluntary sexual activity of young adolescents. They contend that the inclusion of section 288 into section 11165 creates an ambiguity regarding whether the

---

[7]The Attorney General nevertheless argues that appeal is an adequate remedy, because an appeal arising from the prosecution of the Stockton clinic involves similar issues and is now pending before the Third District Court of Appeal. That appeal does not bar writ review by this district. The appeal is from a preliminary injunction issued by the San Joaquin Superior Court, requiring the clinic to report the voluntary sexual conduct of its under-14 clients seeking care for pregnancy, abortion and sexually transmitted diseases. The injunction has been automatically stayed pending appeal. The appeal is fully briefed, but is a civil case with no calendar preference. In any event, the Stockton appeal does not raise all issues brought in this petition.

statute is meant to govern consensual conduct. The Attorney General responds that both section 288 and section 11165 are statutes of plain meaning which beg no ambiguity analysis, and that no under-14-year-old may consent to a sexual act, rendering any sexually active person of that age group a victim of section 288 conduct.

Petitioners describe the following scenario of voluntary conduct treated as child abuse. The voluntary sexual activity of minors under 14 is routinely revealed to a health care professional rendering prenatal care, treatment for a sexually transmitted disease, abortion services or contraception advice. A mandatory child abuse report would necessarily follow or else the professional would be subject to criminal sanction. The under-14 minor may then suffer a government investigation of his or her sexual activity. The child protective agency will investigate whether the minor's siblings are "sexually abused" (i.e., sexually active), and determines who is "responsible" for the minor's "abuse"—the minor's sexual partner. The reports are circulated among local child protective agencies and will result in a loss of medical confidentiality. If the minor has in fact been sexually active, the Department of Justice report would presumably not be considered "unfounded," and the reports of voluntary conduct could remain in the state's computer files indefinitely.

Petitioners also note that the Attorney General's opinion is broader in scope than its literal terms. First, although the opinion on its face applies to only medical and nonmedical practitioners, there is no principled way its ruling cannot apply to all professionals governed by the act, including teachers and others to whom sexual activity may be revealed. The reporting law applies to teachers and other nonmedical professionals, thus encompassing virtually any adult to whom an adolescent under the age of 14 would turn for assistance in connection with his or her voluntary sexual activities. Second, the reporting obligation would arise from sexual conduct falling far short of actual intercourse: section 288 proscribes "lewd and lascivious acts upon the body" with "lustful intent"; sexual penetration is not required, and the statute may be violated by conduct typically referred to as "heavy petting." (See *People* v. *Morales* (1967) 254 Cal.App.2d 194 [61 Cal.Rptr. 764].)

We begin our analysis of the intent of the Legislature by noting that a court engaging in statutory interpretation "'should take into account matters such as context, the object in view, the evils to be remedied, [and] the history of the times.'" (*Cossack* v. *City of Los Angeles* (1974) 11 Cal.3d 726, 733 [114 Cal.Rptr. 460, 523 P.2d 260], quoting *Alford* v. *Pierno* (1972) 27 Cal.App.3d 682, 688 [104 Cal.Rptr. 110].) Whatever one may think of its wisdom or its morality, children under the age of 14 do voluntarily

engage in sexual activity with some understanding of the nature of their conduct. In *People* v. *Cicero* (1984) 157 Cal.App.3d 465 [204 Cal.Rptr. 582], the court reviewed a comprehensive report on adolescent sexuality in the United States prepared by the Department of Health Education and Welfare. The report "collects numerous surveys of sexual experiences of adolescent Americans." The court quoted three surveys showing that by the age of 13, upwards of 20 percent of boys, and a smaller percentage of girls, had engaged in intercourse. (*Id.*, at p. 483.) The *Cicero* court concluded that "some children under age 14 are capable of understanding some forms of sexual conduct and of giving their knowing consent to their participation in it." (*Id.*, at p. 484.)

■ With this in mind, it is our duty to "ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672].) ■ The reporting law's purpose clause declares that "[t]he intent and purpose of the Legislature is to protect children from abuse." (§ 11174.5.) Welfare and Institutions Code section 18975.1, subdivision (a) declares that "[c]hild abuse and neglect is a severe and increasing problem in California." A recent enhanced-prosecution program for child abusers was enacted with the declaration that "child abusers present a clear and present danger to the mental health and physical well-being of the [children] of this state." (Stats. 1985, ch. 1097, § 1.) Business and Professions Code section 28 provides that professionals of the healing arts who have contact with child abuse "victims" are to be "provided with adequate and appropriate training regarding the assessment and reporting of child abuse which will ameliorate, reduce, and eliminate the trauma of child abuse and neglect . . . ."

These provisions contemplate criminal acts of child abuse causing trauma to the victim; they do not contemplate the voluntary sexual associations between young children under the age of 14 who are not victims of a child abuser and are not the subjects of sexual victimizations. Certainly, if the Legislature was of the view that any sexual conduct on the part of a minor under 14 was "sexual abuse," it would have so indicated in clear terms. The Legislature has taken a straightforward stance on child abuse and has significantly failed to mention voluntary sexual activity in any statement of its purpose.

■ Moreover, petitioners assert that the inclusion of voluntary sexual conduct within the ambit of the reporting law will lead to "severe adverse and unnecessary consequences" to the health of minors under 14, which could not have been intended by the Legislature. "[S]tatutes must be construed in a reasonable and common sense manner consistent with their

apparent purpose and the legislative intent underlying them—one practical, rather than technical, and one promoting a wise policy rather than mischief or absurdity." (*Herbert Hawkins Realtors, Inc.* v. *Milheiser* (1983) 140 Cal.App.3d 334, 338 [189 Cal.Rptr. 450].) Through declarations of medical and child care professionals and through citations of research studies, petitioners present facts to demonstrate the adverse consequences of including voluntary conduct within the ambit of the reporting law. It is not necessary to discuss the factual matters in detail. Suffice it to say that petitioners provide ample support for three major factual premises pertinent to their position.

First, there are minors under 14 who are voluntarily engaging in sexual activity and who "urgently need health care relating to their sexual conduct." Ample statistical studies show considerable voluntary sexual activity on the part of young adolescents, many under the age of 14. Because of their sexual activity, these young minors have an urgent need for prenatal care, contraception, abortion services and treatment for sexually transmitted diseases. Second, if such minors are unable to obtain reproductive health care on a confidential basis, without their sexual conduct being reported to law enforcement for investigation, they will be deterred from seeking such care.[8] Third, large numbers of minors in need of prenatal care, abortions to prevent unwanted parenthood, treatment for sexually transmitted diseases and the like will refrain from seeking medical care, to the obvious detriment of their health and that of their infants and sexual partners. For example, young teens are less likely to receive adequate prenatal care and suffer higher rates of infant mortality and birth defects; the sexually transmitted disease known as chlamydia leads to infertility, ectopic pregnancy and increased infant mortality, and is considered of epidemic proportions among teenagers.[9]

---

[8]Minors will also be deterred from seeking birth control. The Attorney General's opinion concludes a minor's request for information regarding birth control will not trigger a reporting obligation if no past sexual conduct is indicated. Petitioners cite studies showing that many minors engage in sex first and seek birth control assistance second; they also assert that because health care professionals generally conduct counseling sessions before prescribing a particular birth control method, prior sexual activity will be revealed and a reporting obligation will arise in virtually every birth control request.

[9]Much of this factual material has been presented to this court in the form of extensive declarations by health care professionals and references to statistical and sociological studies. The matters of fact embodied in the declarations are essentially undisputed; those in the studies are of the type typically relied on by courts deciding sexual privacy cases. Contrary to the objections of the Attorney General, this evidence is properly before us in this proceeding. (See, e.g., *Michael M.* v. *Superior Court* (1979) 25 Cal.3d 608, 611-612 [159 Cal.Rptr. 340, 601 P.2d 572], affd. *Michael M.* v. *Sonoma County Superior Court* (1981) 450 U.S. 464 [67 L.Ed.2d 437, 101 S.Ct. 1200]; cf. Cal. Civil Writs, *supra*, § 17.11, pp. 408-409.)

The Attorney General has done little to seriously contest the accuracy of petitioners' information. He appears to take issue with petitioners' factual claims that there are thousands

There are additional detrimental effects. It is nearly impossible to establish a professional, therapeutic relationship without a promise of confidentiality which the professional can keep. Also, requiring the reporting of voluntary conduct will overburden the reporting system and divert resources from the investigation of reports of actual abuse—thereby working a detriment to the very abused children the Legislature has acted to protect.

Petitioners next refer us to sections of the Civil Code which are inconsistent with the Attorney General's interpretation of the law. ■■■ Statutes are to be construed with reference to the entire system of law of which they are a part, including the various codes, and harmonized wherever possible to achieve a reasonable result. (*Cossack* v. *City of Los Angeles, supra*, 11 Cal.3d at pp. 732-733; *Fuentes* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1 [128 Cal.Rptr. 673, 547 P.2d 449].) ■■■ In the Civil Code, the Legislature has provided for the medical emancipation of minors, including many under 14, by providing them the right to obtain reproductive health care and for other types of medical treatment without parental consent, and with the corollary right to maintain the confidentiality of treatment records even against parental demand.

Civil Code section 34.5 gives unmarried otherwise unemancipated minors of any age the right to give independent consent to "hospital, medical and surgical care related to the prevention or treatment of pregnancy." Other statutes give similar rights of consent to minors of varying ages: section 34.7 (minors age 12 and over, right to consent to treatment for sexually transmitted diseases); section 34.8 (minors age 12 and over, right to consent to treatment for rape); section 34.9 (minors of any age, right to consent to treatment for sexual assault); section 34.10 (age 12 and over, right to consent to treatment for drug/alcohol abuse); section 25.9 (age 12 and over, right to consent to mental health counseling).

In addition to the right of consent, the Legislature has provided a privilege of medical record confidentiality personal to the minor. Civil Code section

---

of minors under 14 who will be deterred from seeking necessary medical aid because of the reporting law's interpretation. He does admit the deleterious consequences of delaying treatment, but denies deterrence and takes issue with the causative link between lack of confidentiality and any deterrent effect. The evidence of deterrence, however, is considerable: A number of health care professionals have attached declarations attesting to the deterrent effect of a lack of confidential treatment. Studies confirm the hypothesis that a lack of confidentiality deters, or at least delays, minors from seeking reproductive health care. Impediments on reproductive health care have been acknowledged as having a deterrent effect. (See, e.g., *Bellotti* v. *Baird* (1979) 443 U.S. 622 [61 L.Ed.2d 797, 99 S.Ct. 3035]; see also *Carey* v. *Population Services International* (1977) 431 U.S. 678, 695-696 [52 L.Ed.2d 675, 691-692, 97 S.Ct. 2010] [in which a plurality of the court took judicial notice that "the incidence of sexual activity among minors is high" and the unavailability of contraceptives had little or no "deterrent effect"].)

56 et seq., which governs disclosure of medical information with the appropriate authorization, provides that only the minor may consent to disclosure of records of treatment to which the minor consented. (See Civ. Code, § 56.11, subd. (c)(2); see also Health & Saf. Code, § 25252, subd. (a) [providing that only the minor, not the minor's representative—i.e., parent—may have access to medical records for treatment to which the minor may lawfully consent].)

 The Attorney General's interpretation of the law cannot be harmonized with the Legislature's comprehensive scheme to medically emancipate minors by enabling them to consent to reproductive health care without the involvement of the parent. By medically emancipating minors, the statutes, particularly Civil Code section 34.5, seem to presuppose the ability to consent to sexual activity. The minor seeking reproductive health care under Civil Code section 34.5 has the right to independently consent to the treatment and keep its records from the sight of the parent.

In *Ballard* v. *Anderson, supra*, 4 Cal.3d 873, the Supreme Court interpreted Civil Code section 34.5, and held that the statutory right to reproductive health care could not be denied those under a certain age. "The age of fertility provides the practical minimum age requirement" under the statute, with the additional limitation that the minor must be of sufficient maturity to give informed consent to any medical treatment procedure, including therapeutic abortion. (*Id.*, at pp. 882-883.) We must presume the Legislature was aware of *Ballard* when it enacted the child abuse reporting law; the failure of the reporting law to expressly speak to the subject of consensual sex of minors indicates a lack of intent to include such conduct within the ambit of reportable abuse.

 Furthermore, statutes are to be construed to give meaningful effect to all of their provisions, and to avoid rendering any language superfluous. If the Legislature did not intend the medical emancipation statutes to apply to voluntary sexual conduct of minors under 14, it would have provided them medical emancipation only when they were victims of "sexual assault" (Civ. Code, § 34.9); it would not have enacted a separate section applying more broadly to reproductive health care.

The Attorney General, in a prior opinion, has emphatically underscored the importance of the medical emancipation statutes. In 66 Ops.Cal.Atty.Gen. 244 (1983), the Attorney General declared that a minor who was medically emancipated could permissibly leave school to obtain corresponding medical care. A pregnant minor seeking an abortion under Civil Code section 34.5—who may be under 14—could leave school for the abortion; the school authorities were under no legal duty to notify the

minor's parents. Although the child abuse reporting law was not at issue in the opinion, the Attorney General's current interpretation would now require the school authorities—who are professionals with a reporting obligation— to report to not simply parents but to *law enforcement* the minor's sexual activity on the theory that she was an "abuse" victim.

It is difficult to reconcile a legislative intent to provide for confidential health care, and the Attorney General's interpretation of that intent which requires the care-giving health care professional to violate confidentiality by reporting the conduct as "child abuse." The confidentiality of the medical treatment would vanish by reporting intimate personal information to state agencies, and by a resulting governmental investigation. If a minor seeking care under the medical emancipation statutes is actually abused, the matter must be reported. But by requiring blanket reporting of voluntary sexual activity solely on the basis of age, the Attorney General has taken a position inconsistent with the Legislature's judgment that minors under 14 are entitled to confidential reproductive health care.[10]

A prior challenge to the reporting law provides further evidence of legislative intent. When first enacted, the 1981 law included in its list of Penal Code sections defining sexual assault the unlawful intercourse statute, section 261.5. That section prohibits any act of intercourse with an unmarried woman under 18, regardless of whether the act is voluntary. (See 1 Witkin, Cal. Crimes (1963) §§ 292, 293, pp. 268-269; *People* v. *Hernandez* (1964)

---

[10]The Attorney General argues the *Ballard* opinion supports his interpretation of the reporting law. He contends that because the reporting law, since 1981, specifically includes section 288 within its definition of reportable sexual assault, then all minors under 14 are of insufficient maturity to be medically emancipated under Civil Code section 34.5 because they cannot consent to a sexual act: "neither a medical practitioner nor a child under 14 years may consent to a violation of Penal Code section 288." The Attorney General insists that the passage of the reporting law in its current version evinces a legislative intent to modify *Ballard*'s physician-determined standard of sufficient maturity to a bright line demarcation drawn at age 14.

We disagree. The Attorney General is presuming that before 1981, section 288 was not intended to be reportable abuse, so that when the offense was added after *Ballard*, the addition means a new intent involving modification of the case language. The Attorney General has conceded, however, that conduct in violation of section 288 was regarded as child abuse before the 1981 enactment of the current reporting law. The mere inclusion of section 288 in the reporting law seems an oblique way, at best, to legislatively modify *Ballard*'s holding that certain minors under 14, if sufficiently mature, may knowingly consent to reproductive health care and therefore be medically emancipated; certainly the Legislature could have changed the law in more explicit terms. Also, as we will discuss in more detail below, the bright line standard urged by the Attorney General runs into a head-on conflict with the constitutional decisions granting mature minors, who may very well be under 14, the privacy rights to consent to abortion and have access to contraceptives. In the 1983 Attorney General opinion, the author opined that the 1975 amendment to Civil Code section 34.5 did *not* affect the continued vitality of the *Ballard* case and presumably the age-imprecise "mature minor" standard which has been followed by the federal courts.

61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092].) Inclusion of the section in the law rendered child-abuse reporting mandatory anytime a woman under 18 revealed sexual activity to a health care or other professional covered by the statute: by indicating she had had intercourse, a woman under 18 ipso facto revealed she had been the victim of the unlawful intercourse statute. Any sexually active woman under the age of 18 faced reporting of intimate information to the state whenever she sought prenatal care, treatment for sexually transmitted diseases, contraception, and the like.

The inclusion of section 261.5 was challenged by an original petition for writ of mandate filed in the California Supreme Court. (*Cathy R. v. Deukmejian,* S.F. No. 24271.) On March 5, 1981, the Supreme Court ordered the cause transferred to the First District Court of Appeal with directions to issue the alternative writ of mandate, staying operation and enforcement of the reporting law insofar as it applied to conduct in violation of section 261.5.

Shortly thereafter, and in response to the mandamus proceeding, the Legislature amended section 11165, subdivision (b)(1), to delete section 261.5. The background of the amendment was set forth in a May 9, 1981, analysis by the Assembly Committee on Criminal Justice. The analysis indicates that the Legislature would not have enacted the law, including section 261.5, had it realized it would require "reporting of promiscuous activity of females under the age of 18 years . . . [which would] divert the investigative attention away from real child abuse cases ultimately leading to less effective protection for the true victims." The Legislature also recognized through the Assembly Committee on Criminal Justice's analysis the provision would "force physicians and counselors to break the law in order to perform their services under necessary confidentiality." The Legislature eliminated the statute, concluding that "[t]he existing provisions of law are causing the overreporting of various acts unrelated to child abuse . . . creating a detrimental impact upon the efforts of the Legislature to deal with the problem of child abuse." (Stats. 1981, ch. 29, § 2, p. 69.)[11]

██ A fundamental part of the reporting law is to allow the trained professional to determine an abusive from a nonabusive situation. Instead of a blanket reporting requirement of all activity of those under a certain age, the professional can make a judgment whether a minor is having voluntary relations or is being sexually abused. The medical emancipation statutes and the Legislature's response to the *Cathy R.* petition suggest no intent to include consensual sexual activity within the ambit of the reporting law.

---

[11]Upon amendment of the reporting law, the *Cathy R.* writ proceeding was presumably dismissed as moot.

The Attorney General nevertheless maintains that no statutory interpretation is necessary because the reporting law must be given its literal meaning. Since that law includes section 288, the Attorney General argues it unambiguously governs all under-14 sexual activity. The argument, of course, overlooks the need to interpret statutes in harmony with legislative intent and with other apparently conflicting provisions, in this case the medical emancipation statutes. The Attorney General's contention also overlooks the rule that even a statute's literal terms will not be given effect if to do so would yield an unreasonable or mischievous result. (See *Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049]; *In re Haines* (1925) 195 Cal. 605, 613 [234 P. 883]; cf. *People* v. *Perkins* (1984) 159 Cal.App.3d 646, 650 [205 Cal.Rptr. 625].) In any case, even the literal meaning of the inclusion of section 288 in the reporting law would not lead to the Attorney General's ultimate conclusion that any under-14 sexual activity is "child abuse."

Assume hypothetically that two 13-year-olds are engaging in voluntary sexual conduct. Under the typical scenario posed by the reporting requirement, the female would seek reproductive health care, indicate sexual activity, and thus be labelled the "victim" of a violation of section 288. Her status as "victim" requires that someone be a "perpetrator" of abuse, and this person can only be the minor's age-appropriate sexual partner. The analogy must fail, however, because the 13-year-old boy is probably legally incapable of violating section 288. Our research and that of the parties has failed to disclose any authority from any jurisdiction indicating that an under-14 minor may be found delinquent by a juvenile court for violating section 288 or another state's counterpart. This is the case because notwithstanding the de facto ability of some minors under 14 to consent to sex, the law assumes that such minors cannot.

Older cases indicate children under 14 as à "protected class" under the statute: "section 288 is for protection of infants or children as to whom persons commit lewd and lascivious acts . . . ." (*People* v. *Toliver* (1969) 270 Cal.App.2d 492, 496 [75 Cal.Rptr. 819], cert. den. 396 U.S. 895 [24 L.Ed.2d 172, 90 S.Ct. 193]; see *People* v. *Hernandez, supra,* 61 Cal.2d at p. 536.) The statute applies to all minors under 14, male or female. (*People* v. *Curtis* (1905) 1 Cal.App. 1 [81 P. 674].) Like a victim of statutory rape, victims of section 288 are generally not liable as accomplices to adult principals. (1 Witkin, Cal. Crimes, *supra,* § 546, p. 498; *People* v. *Terry* (1960) 180 Cal.App.2d 48, 59 [4 Cal.Rptr. 597], cert. den. 364 U.S. 941 [5 L.Ed.2d 372, 81 S.Ct. 458]; see *People* v. *Becker* (1947) 80 Cal.App.2d 691 [181 P.2d 958].) The minor's consent to the sexual conduct is no defense.

(*People* v. *Cicero, supra,* 157 Cal.App.3d at p. 482; *People* v. *Toliver, supra,* at p. 496.)

The peculiar status of a section 288 victim was discussed in *People* v. *Olsen* (1984) 36 Cal.3d 638 [205 Cal.Rptr. 492, 685 P.2d 52]. *Olsen* held that a reasonable mistake as to the section 288 victim's age is *not* a defense to the charge, in light of the special status accorded children of "tender years." In an earlier case, *People* v. *Hernandez, supra,* 61 Cal.2d 529, the court overruled *People* v. *Ratz* (1896) 115 Cal. 132 [46 P. 915], and held that a reasonable mistake that a sexual partner was over 18 was a defense to section 261.5, proscribing intercourse with a minor under 18. The *Olsen* opinion quoted *Hernandez* as cautioning that its holding was "not 'indicative of a withdrawal from the sound policy that it is in the public interest to protect the sexually naive female from exploitation.'" (*People* v. *Olsen, supra,* at p. 644, quoting *People* v. *Hernandez, supra,* at p. 536.) A "'sexually naive female'" was described as an "'infant'" of "'obviously tender years.'" (*Ibid.*) The *Olsen* court derived from *Hernandez* the principle that an "infant" female, i.e., a female under the age of 14, is to be protected against the sexual exploitation of the child abuser even if the criminal actor reasonably believes she is over 14. Noting the legislative determination that persons under 14 years of age are in need of special protection, the court concluded that one who commits a lewd and lascivious act with a child under 14 "does so at his or her peril." (*People* v. *Olsen, supra,* at p. 649.)

▮ It does not appear that a minor under 14 may be found delinquent for violating section 288. Obviously, the typical offender under the section is an adult. In a few cases, however, *minors* have been found delinquent for violating the statute, but the minors have all been over 14 and their victims substantially younger. In *In re J.D.W.B.* (1970) 8 Cal.App.3d 103 [87 Cal.Rptr. 178], a 15-year-old defendant was found delinquent for a lewd act on a 5-year-old victim; *In re Leonard M.* (1978) 85 Cal.App.3d 887 [149 Cal.Rptr. 791] involved actors aged 16 and 5, respectively. In neither case was the issue of a minor's ability to violate the statute discussed. In *In re James P.* (1981) 115 Cal.App.3d 681 [171 Cal.Rptr. 466], a 15-year-old defendant was adjudicated delinquent for lewd conduct involving a 10-year-old victim. He was found to have violated section 272, contributing to the delinquency of a minor, as a lesser included offense of the charged offense of section 288. The court held that despite the purpose of section 272 to protect minors as a class, one member of the protected class could be found delinquent for contributing to the delinquency of another. None of these cases are instructive, as they do not involve a minor under 14 as the charged criminal actor.[12]

---

[12]We are aware that one California decision suggests that a minor under 14 may be pros-

The concept that a minor under 14 could be found delinquent for abusing an under-14 victim finds some support in *People* v. *Roberts* (1972) 26 Cal.App.3d 385 [103 Cal.Rptr. 25]. In that case, the trial court dismissed two section 288 charges because Roberts had not actually touched the victims, but encouraged them to engage in lewd acts with each other. On appeal by the People, Roberts argued an apparent conflict between sections 26 and 31. Section 31 makes one a principal in any crime he encourages a minor under 14 to commit; section 26, however, says a minor under 14 is "incapable" of committing a crime. Roberts made the technical argument that section 26 made section 31 essentially meaningless. The court disagreed, following the old rule that encouraging one with a legal disability to commit a crime does not insulate the encourager from principal liability. In dicta, however, the court went on to state that section 26 does not exempt *all* children under 14 from criminal liability: the child is not legally disabled if he or she knew of the wrongfulness of the conduct. In a broad statement, the court said the victims' "knowledge of wrongfulness may be inferred from the record." (*Id.*, at pp. 388-389.) Of course, it is difficult to see how an under-14 minor can "know of wrongfulness" if he or she is supposedly legally incapable of knowingly consenting to sexual acts. The *Roberts* dicta confuses general accomplice liability and legal disability to commit a particular crime. Moreover, the dicta is inconsistent with certain language in *Olsen,* which suggests an inapplicability of section 26 "when the child is a victim, rather than an accused." (*People* v. *Olsen, supra,* 36 Cal.3d at pp. 647-648.)[13]

Under a strict legal analysis, a 13-year-old can generally only be a victim of section 288, not a perpetrator. If the law regards both hypothetical 13-year-olds as sexually naive, which of them is the "abused" and which the "abuser"? Who has the necessary criminal intent to sexually exploit one of tender years? It is illogical to apply in a bright line fashion section 288 to the voluntary sexual conduct among minors who happen to fall under the age mandating protection from exploitive adults.

---

ecuted under section 288. (*People* v. *Love* (1916) 29 Cal.App.521 [157 P. 9].) The defendant in *Love* was an adult; the language regarding minors under 14 was dicta and unaccompanied by substantial analysis.

[13]For similar reasons we reject the Attorney General's reliance on *In re Gladys R.* (1970) 1 Cal.3d 855 [83 Cal.Rptr. 671, 464 P.2d 127]. That case interprets section 647a, which proscribes the "annoying or molesting" of all minors with "motivation by an abnormal sexual interest or intent." (*Id.*, at p. 869.) The court concluded that a minor under 14 could be found to violate section 647a if the minor has the necessary mental state under section 26. However, section 647a does not purport to protect a narrower class of younger minors on the specific and historical basis of legal incapacity to consent to sexual acts. It protects all minors generally from sexual molestation not predicated on the incapacity presumed by section 288. The *Olsen* language just quoted in the text suggests strongly that *Gladys R.*'s holding does not apply broadly to all minors under 14, in the context of a prosecution for violation of section 288.

This conclusion is consistent with the general view of the statute, that it applies to the sexual exploitation of sexually naive children by adults or older minors who do not suffer from the legal disability on their understanding of sexual acts. The de facto voluntary sexual conduct among minors under the age of 14 may be ill advised, but it is not encompassed by section 288. The inclusion of that statute in the reporting law does not mandate reporting of such activity.[14]

■■■ In sum, we must construe the reporting law as showing no legislative intent to require the reporting of voluntary sexual activity among minors under age 14. The Attorney General's announced plans of implementation of the law consistent with his opinion is therefore in conflict with the statutory provisions and without authorization, and is therefore unlawful and subject to restraint by prohibitory mandate. We reach this conclusion for the additional reason that we must construe statutes to harmonize with the constitution whenever possible (*California Housing Finance Agency* v. *Elliott* (1976) 17 Cal.3d 575, 594 [131 Cal.Rptr. 361, 551 P.2d 1193]), and the Attorney General's view of the reporting law is in direct conflict with the California constitutional right of privacy.

IV

A

■■■ In November 1972, the California voters amended article I, section 1 of the state Constitution to include the right of privacy among the various

---

[14]We can conceive of a hypothetical, sexually sophisticated 13-year-old who abuses a much younger child with the requisite criminal intent to exploit his or her sexual naivete. Under these circumstances, section 26 may well invoke section 288 notwithstanding our foregoing analysis. The conduct might then be reportable as child abuse—but certainly the Attorney General's rule of reporting *all* under-14 sexual conduct does not permit a case-by-case analysis of the minor's mental state under section 26. The conduct might also be reportable as sexual abuse as defined in other provisions of the reporting law, such as section 647a (see fn. 13, *ante*). The situation of the sexually exploitive 13-year-old, however, is markedly different from the situation of two 13-year-olds acting without the necessary intent to exploit, but engaging in sexual behavior on a voluntary, nonexploitive basis.

We limit our holding to voluntary conduct among minors under 14 years of age. The constant theme of this case has involved such conduct. The petition refers to sexual activity with a partner of "appropriate" age. The clear focus at oral argument was on the hypothetical of two teens under 14 and the applicability, if any, of section 288—a question in which we invited supplemental briefing. No doubt because the nature of this case permitted only a general factual backdrop, the parties have not discussed the various factual possibilities attendant on the age differentials of sexual partners. We thus do not decide the question of whether the reporting law applies to the de facto voluntary conduct of a minor under 14 whose partner *is* subject to criminal liability under section 288: the minor over 14 or the adult. This issue poses a more direct confrontation with section 288 and has not been sufficiently developed in this case. Petitioners have overlooked the fact that for those to whom it applies, section 288 proscribes sexual conduct with a minor under 14 regardless of whether that minor is sexually sophisticated or his or her conduct is voluntary. Whether the age of 14 remains the appropriate line of demarcation is for the Legislature to determine.

inalienable rights of "all people" of the state. The California Supreme Court has declared the state constitutional right to be much broader than the privacy rights guaranteed by the federal Constitution. (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at pp. 262-263; *City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 130, fn. 3 [164 Cal.Rptr. 539, 610 P.2d 436, 12 A.L.R.4th 219].) Under both California and federal Constitutions, a right of substantive sexual privacy has been firmly established.

The United States Supreme Court has emphatically established the federal right of sexual privacy in a familiar long line of cases. (*Loving* v. *Virginia* (1967) 388 U.S. 1 [18 L.Ed.2d 1010, 87 S.Ct. 1817]; *Griswold* v. *Connecticut* (1965) 381 U.S. 479 [14 L.Ed.2d 510, 85 S.Ct. 1678]; *Eisenstadt* v. *Baird* (1972) 405 U.S. 438 [31 L.Ed.2d 349, 92 S.Ct. 1029]; *Planned Parenthood of Missouri* v. *Danforth* (1976) 428 U.S. 52 [49 L.Ed.2d 788, 96 S.Ct. 2831]; *Carey* v. *Population Services International, supra,* 431 U.S. 678; *Akron* v. *Akron Ctr. for Reproductive Health* (1983) 462 U.S. 416 [76 L.Ed.2d 687, 103 S.Ct. 2481].) These cases establish a general right to make sensitive reproductive health care decisions without the unwarranted intrusion of government. (See, e.g., *Akron* v. *Akron Ctr. for Reproductive Health, supra,* at pp. 426-427 [76 L.Ed.2d at pp. 700-701].)

Under the state Constitution, the right to sexual privacy has been delineated in a variety of contexts. (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at p. 262; *People* v. *Belous* (1969) 71 Cal.2d 954 [80 Cal.Rptr. 354, 458 P.2d 194], cert. den. 397 U.S. 915 [25 L.Ed.2d 96, 90 S.Ct. 920]; *Fults* v. *Superior Court* (1979) 88 Cal.App.3d 899 [152 Cal.Rptr. 210].) Cases involving the disclosure of medical records have stressed the substantive privacy rights affected by disclosure of medical histories which include intimate information such as obstetrical/gynecological profiles. (*Wood* v. *Superior Court* (1985) 166 Cal.App.3d 1138 [212 Cal.Rptr. 811]; *Jones* v. *Superior Court* (1979) 119 Cal.App.3d 534 [174 Cal.Rptr. 148]; *Board of Medical Quality Assurance* v. *Gherardini* (1979) 93 Cal.App.3d 669 [156 Cal.Rptr. 55].)

The federal and state rights extend the right of sexual privacy to minors. The United States Supreme Court has repeatedly held that minors enjoy many of the constitutional rights of adults: e.g., First Amendment freedom of expression (*Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503 [21 L.Ed.2d 731, 89 S.Ct. 733]); equal protection against racial discrimination (*Brown* v. *Board of Education* (1954) 347 U.S. 483 [98 L.Ed. 873, 74 S.Ct. 686, 38 A.L.R.2d 1180]); due process in civil contexts (*Goss* v. *Lopez* (1975) 419 U.S. 565 [42 L.Ed.2d 725, 95 S.Ct. 729]); and a variety of substantive and procedural rights in juvenile court proceedings (*Breed* v.

*Jones* (1975) 421 U.S. 519 [44 L.Ed.2d 346, 95 S.Ct. 1779]; *In re Winship* (1970) 397 U.S. 358 [25 L.Ed.2d 368, 90 S.Ct. 1068]; *In re Gault* (1967) 387 U.S. 1 [18 L.Ed.2d 527, 87 S.Ct. 1428]). "[N]either the Fourteenth Amendment nor the Bill of Rights is for adults alone." (*In re Gault, supra,* at p. 13 [18 L.Ed.2d at p. 538].)

Against the backdrop of this constitutional tradition, the United States Supreme Court has repeatedly declared the constitutional right of sexual privacy applicable to minors. (See *Planned Parenthood of Missouri* v. *Danforth, supra,* 428 U.S. 52; *Carey* v. *Population Services International, supra,* 431 U.S. 678; *Akron* v. *Akron Ctr. for Reproductive Health, supra,* 462 U.S. 416.) These decisions have created the "mature minor" standard, declaring that a minor of sufficient maturity to make reproductive health care decisions enjoys the same constitutional privileges as an adult, including access to contraceptives and the ability to make a decision whether or not to undergo an abortion without undue interference from the state. No minimum chronological age has been established for "maturity": the determination is made on a case-by-case basis. (See, e.g., *Bellotti* v. *Baird, supra,* 443 U.S. 622.)

The California right of sexual privacy, broader than its federal counterpart, necessarily imports the same constitutional privileges to the mature minor. Furthermore, the California Constitution guarantees the right of privacy to "all persons," a phrase necessarily including minors as California citizens. (See *In re William G.* (1985) 40 Cal.3d 550, 556 [221 Cal.Rptr. 118, 709 P.2d 1287] ["It is well settled that minor students are 'persons' under our state and federal Constitutions . . . ."].) Although, evidently, no California case has discussed the state constitutional sexual privacy right of minors (cf. *Conservatorship of Valerie N.* (1985) 40 Cal.3d 143 [219 Cal.Rptr. 387, 707 P.2d 760]), they readily apply to minors the general concepts of privacy. ▮ Minors may lawfully maintain a tort cause of action for invasion of privacy. (*Vescovo* v. *New Way Enterprises, Ltd.* (1976) 60 Cal.App.3d 582, 587-588 [130 Cal.Rptr. 86].) ▮ Under the constitutional prohibition of unlawful search and seizure (Cal. Const., art. I, § 13), minors were found to enjoy a state constitutional right of privacy exercisable against the minor's parents (*In re Scott K.* (1979) 24 Cal.3d 395 [155 Cal.Rptr. 671, 595 P.2d 105]), as well as against school officials' standing in loco parentis (*In re William G., supra,* 40 Cal.3d 550; see *New Jersey* v. *T.L.O.* (1985) 469 U.S. 325 [83 L.Ed.2d 720, 105 S.Ct. 733]).[15] The state Constitution thus guarantees at least the mature minor, who may be under the age of 14, the right to sexual privacy.

---

[15]*In re William G., supra,* 40 Cal.3d 350, did not decide the effect of Proposition 8 on a minor's right of privacy under California Constitution, article I, section 13. (40 Cal.3d at p. 557, fn. 5.)

 Under either Constitution, sexual privacy is not absolute, but may only be infringed upon by the least restrictive alternative necessary to facilitate a compelling state interest. (*Committee to Defend Reproductive Rights* v. *Myers, supra,* 29 Cal.3d at pp. 280-281; *Eisenstadt* v. *Baird, supra,* 405 U.S. at p. 453 [31 L.Ed.2d at p. 362] ["the *individual . . .* [has the right] to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child"].) The state bears the onus of proving that any burden on sexual privacy rights is necessary to fulfill a compelling state interest. (*Carey* v. *Population Services International, supra,* 431 U.S. at pp. 684-686, 690-691 [52 L.Ed.2d at pp. 684-686, 688-689].) Although the mature minor enjoys the same sexual privacy rights as an adult, the state's burdening of the minor's rights is governed by a standard which is "apparently less rigorous" than the compelling state interest test, "because of the State's greater latitude to regulate the conduct of children." (At p. 693, including fn. 15 [52 L.Ed.2d at p. 690].) The state need show that the privacy burden serves "'any significant state interest . . . that is not present in the case of an adult.'" (*Ibid.,* fn. omitted; quoting *Planned Parenthood of Missouri* v. *Danforth, supra,* 428 U.S. at p. 75 [49 L.Ed.2d at p. 808].)

 The Attorney General fails to meet his burden of showing a significant state interest, much less a compelling one, for reporting voluntary sexual behavior as child abuse. He argues only that invasions of sexual privacy are either nonexistent or justified because of the legislative judgment of the serious need for child abuse reporting. His argument begs the question whether under-14 minors' voluntary sexual conduct is "child abuse" under the reporting law by virtue of section 288. The Attorney General first argues that the right to medical or psychiatric privacy is not absolute, and may be subsumed under a compelling state interest of disclosure of confidential matters in a lawsuit, or under a duty to inform law enforcement of a dangerous patient who has threatened a third party. (*Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166]; *In re Lifschutz* (1970) 2 Cal.3d 415 [85 Cal.Rptr. 829, 467 P.2d 557, 44 A.L.R.3d 1].) From this principle, the Attorney General moves to *People* v. *Stritzinger* (1983) 34 Cal.3d 505 [194 Cal.Rptr. 431, 668 P.2d 738]. Stritzinger was convicted of multiple counts of molesting his stepdaughter; the state's case included testimony he had with his psychiatrist during which he admitted and discussed the acts of molestation. In deciding whether the doctor's testimony was properly admitted, a ruling not germane to the discussion here, the Supreme Court explicitly recognized the child abuse reporting law fulfilled a compelling state interest sufficient to require reporting to law enforcement disclosure of child abuse made to a psychiatrist. (*Id.,* at pp. 511-512.)

*Stritzinger* is inapposite to this case, which involves not the right of the accused child abuser but the sexual privacy right of a minor engaging in voluntary conduct. Likewise inappropriate is the Attorney General's reliance on two post-*Stritzinger* Court of Appeal decisions. In *People* v. *Younghanz* (1984) 156 Cal.App.3d 811, 815-818 [202 Cal.Rptr. 907], the court upheld the child abuse reporting law against two constitutional claims of a child abuse defendant: (1) that the law infringed upon his constitutional right to obtain medical treatment; and (2) that the disclosure requirement of the law violated his privilege against self-incrimination by converting the reporting professional into a "state agent" transmitting incriminating statements to the police. The *Younghanz* court found no constitutional right to medical treatment and rejected the "state agent" argument, emphasizing the overriding purpose of the reporting law vis-à-vis the defendant/patient's right of privacy and confidential medical treatment. In *People* v. *Battaglia* (1984) 156 Cal.App.3d 1058, 1062-1064 [203 Cal.Rptr. 370], the court rejected arguments of similar style.

By these and other authorities (see, e.g., *Landeros* v. *Flood* (1976) 17 Cal.3d 399 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324]), the Attorney General has established only the general proposition that the child abuse reporting law is of sufficient importance to the fight against child abuse that it may override an accused abuser's constitutional rights, as well as the ethical or statutory confidentiality obligations of a professional. We have no quarrel with this proposition, but it does not resolve the issue before us. The Attorney General has advanced no significant state interest served by the reporting of voluntary behavior. The reporting of voluntary nonabusive behavior as mandated by the Attorney General's opinion therefore violates the right to sexual privacy guaranteed mature minors by the California Constitution.[16]

B

Petitioners also claim the reporting requirement violates the minors' rights of informational privacy, also guaranteed by the state Constitution. They rely on *White* v. *Davis* (1975) 13 Cal.3d 757 [120 Cal.Rptr. 94, 533 P.2d 222]. *White* declared that the state constitutional right of privacy banned unnecessary police surveillance not essential to a compelling state interest, as well as "the overbroad collection and retention of unnecessary personal information by government . . . interests." (*Id.*, at p. 775.) Without a legitimate compelling state interest to justify data retention, government

---

[16]Nothing in this opinion creates a defense for an adult or minor 14 or over charged with section 288 who claims his victim was a "mature minor" within the meaning of the sexual privacy cases and consented to the act. Our decision is limited to sexual conduct among minors under 14. (See fn. 14, *ante*.)

data retention threatens fundamental privacy values, including the "ability to control circulation of personal information," the prevention of the improper disclosure of personal data "to embarrass us" and the restraint on government from "creat[ing] 'cradle-to-grave' profiles of every American." (*Id.*, at p. 774, italics omitted.)

Ever since *Griswold* v. *Connecticut, supra*, 381 U.S. 489, courts have readily held that few things are more intimate and more deserving of privacy protections. "Surely no aspect of a woman's medical profile is more sensitive in terms of privacy interests than her obstetrical-gynecological history." (*Jones* v. *Superior Court, supra*, 119 Cal.App.3d at 549.) Other types of information of a perhaps less intimate nature have been ruled protected by the state constitutional right of privacy. (See, e.g., *Valley Bank of Nevada* v. *Superior Court* (1975) 15 Cal.3d 652 [125 Cal.Rptr. 553, 542 P.2d 977] [financial records]; *Porten* v. *University of San Francisco* (1976) 64 Cal.App.3d 825 [134 Cal.Rptr. 839] [educational records]; *Payton* v. *City of Santa Clara* (1982) 132 Cal.App.3d 152 [183 Cal.Rptr. 17] [employment records].) Other protected information is not particularly intimate at all. (*H & M Associates* v. *City of El Centro* (1980) 109 Cal.App.3d 399 [167 Cal.Rptr. 392] [information showing whether a commercial enterprise paid the utility bill on an apartment complex].)

The recordkeeping envisioned by the reporting law is a violation of informational privacy; the Attorney General has not actively contested the issue. There is no reason for the data compilation system to retain records of voluntary conduct, and there is no compelling state interest to justify the privacy violation. There is no apparent law enforcement purpose for the recording of voluntary behavior; indeed, petitioners claim many child protective agencies of their own accord drop their investigation when the voluntary nature of the conduct is established. The retention of records of voluntary behavior does not aid in bringing the child abuser to justice: since there is no provision for the purging of such records from the government's computers, the recordkeeping only creates a serious potential for the type of long-term records of personal data that was condemned by our Supreme Court in *White*.

The only justification was advanced for the first time at oral argument. The Attorney General contended the reporting of voluntary conduct was important for social science research. We decline to justify governmental investigations and computer files of voluntary sexual behavior as a contribution to a future academician's database.

### Conclusion

Implementation of the Attorney General's opinion would result in reporting of voluntary behavior, a result both inconsistent with the intent of

the Legislature and in violation of the California Constitution's privacy guarantees. We therefore grant the peremptory writ.

Let a peremptory writ of mandate issue restraining the Attorney General of the State of California, and all California district attorneys, from henceforth and forever enforcing, implementing and administering the child abuse reporting law insofar as that law applies to voluntary, consensual sexual behavior among minors under the age of 14, bearing no indicia of actual sexual or other abuse in the judgment of the reporting professional involved. Nothing in this opinion shall be interpreted as interfering with the reporting law's application to actual child abuse. The statewide stay heretofore imposed shall remain in effect until the finality of this opinion.

King, J., and Haning, J., concurred.

Petitions for a rehearing were denied June 16, 1986, and the opinion was modified to read as printed above. The petitions of all parties for review by the Supreme Court were denied July 31, 1986. Panelli, J., was of the opinion that the petitions should be granted.