Premo, J.
*1180 Defendant John Paul Florez is currently serving a "Three Strikes" sentence. Following the passage of Proposition 36, the Three Strikes Reform Act, he filed a petition for resentencing under Penal Code section 1170.126.[1] Although he was eligible to be resentenced based on his current and past offenses, the trial court exercised its discretion to find that resentencing him "would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)) and denied his petition. Defendant appealed. For the *1181 reasons set forth below we find no merit in any of defendant's arguments on appeal and affirm the order denying his petition.
FACTUAL AND PROCEDURAL BACKGROUND
In 1998, police officers saw defendant urinating behind a convenience store in San Jose. Officers believed defendant dropped something on the ground. Shortly thereafter, officers discovered a small bag containing 0.19 grams of cocaine near where defendant had been standing. Officers also determined that defendant was under the influence of opiates and cocaine.
In 1999, defendant pleaded guilty to a felony for possession of a cocaine base and a misdemeanor for being under the influence. He also admitted he had been convicted of four prior strike convictions within the meaning of the former Three Strikes Law and that he had served three prior prison terms. Following his plea, the trial court sentenced defendant to a term of 25 years to life and an additional three years for his prior prison terms.
Defendant's prior strike convictions were for robbery. In 1990, defendant put a knife to a victim's throat, pulled the victim out of a car, beat the victim, and took the victim's car. In 1983, defendant placed a knife to the throat of a 7-Eleven store employee and demanded money. In 1976, defendant robbed two different convenience stores.
On January 14, 2013, defendant filed a petition for resentencing under section 1170.126. At the time he filed the petition, defendant was 63 years old and had served 15 years of his prison sentence.
The People opposed defendant's petition, conceding that his offenses rendered him eligible for resentencing under section 1170.126but arguing that resentencing him would pose an unreasonable risk of danger to public safety. Attached to the People's opposition were defendant's prison records, which reflected that he had been involved in fights and altercations while incarcerated. The latest incident involving violence took place in 2009.
On October 18, 2013, defendant filed a response to the People's opposition to his petition for resentencing. In his response, defendant argued that the dangerousness finding must be submitted to a jury.
On October 22, 2013, the court held a hearing and heard evidence and argument regarding defendant's petition.[2] Defendant *423 had an expert testify that *1182 recidivism reduces with age, and the recidivism rate of a third strike inmate of defendant's age was about 1 percent. Defendant had not abused substances since his incarceration. He had also been accepted into a transitional program. One of defendant's relatives spoke during the hearing, describing that defendant would receive support if resentenced and released.
Afterwards, the court denied defendant's petition, finding that resentencing him would pose an unreasonable risk of danger to public safety. The court noted that defendant had broken rules in prison and had been involved in fights and altercations, even after he was considered elderly. Further, the court asserted that it was especially troubling that it appeared that defendant had not participated in programming to address his problem areas, such as anger management or substance abuse. Defendant appealed.
DISCUSSION
1. Petition for Resentencing
a. Statutory Background
In November 2012, California voters approved Proposition 36, the Three Strikes Reform Act of 2012 (hereafter the Reform Act). Prior to the passage of Proposition 36, the former Three Strikes law (§§ 667, subds. (b)-(i), 1170.12) mandated that a defendant who is convicted of two prior serious or violent felonies would be subject to a sentence of 25 years to life upon conviction of a third felony. The Reform Act amended the three strikes law. Now, section 1170.12, subdivision (c)(2)(C) and section 667, subdivision (e)(2)(C) provide that a defendant with two or more strikes who is convicted of a felony that is neither serious nor violent be sentenced as a second strike offender, unless certain exceptions apply.
The Reform Act also added section 1170.126, which allows eligible inmates who are currently subject to 25-years-to-life sentences under the former three strikes law to petition the court for resentencing. "Section 1170.126, subdivisions (a)and (b), broadly describe who is eligible to file a petition and to be resentenced. Subdivision (a) of section 1170.126states: 'The resentencing provisions under this section and related statutes are intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence. ' " (Teal v. Superior Court (2014) 60 Cal.4th 595, 598, 179 Cal.Rptr.3d 365, 336 P.3d 686.) "Subdivision (b) of section 1170.126states: 'Any person serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of *1183 subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12 upon conviction, whether by trial or plea, of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7, may file a petition for a recall of sentence ....' " (Id. at p. 599, 179 Cal.Rptr.3d 365, 336 P.3d 686.)
An eligible prisoner "shall be resentenced" as a second strike offender unless the court determines that resentencing him or her "would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising its discretion under section 1170.126, subdivision (f), the trial court may consider various factors including the petitioner's criminal conviction history, disciplinary record and record of rehabilitation while incarcerated, and "[a]ny other evidence the court ... determines to be relevant...." (Id. subd. (g)(3).)
*424 b. Scope of the Court's Discretion
On appeal, defendant argues that the court erred when it denied his petition for resentencing, because it failed to understand that section 1170.126creates a presumption in favor of reducing an eligible petitioner's sentence. Defendant also claims that the court erred when it failed to consider the limits on its discretion imposed by the Reform Act, which he argues created a new sentencing norm.
Section 1170.126, subdivision (f)states in pertinent part that "the petitioner shall be resentenced pursuant to [a second-strike term] unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (Italics added.) Defendant maintains that "[s]ome statutes contain express qualifications delineating, and thereby restricting, the particular exercise of discretion" (People v. Superior Court (Alvarez ) (1997) 14 Cal.4th 968, 977, 60 Cal.Rptr.2d 93, 928 P.2d 1171); therefore, the "shall/unless" language establishes a presumption in favor of resentencing a petitioner that can only be overcome if the court finds the petitioner would present an unreasonable risk of danger to public safety.
In part, defendant cites to statutes relating to the grant or denial of parole. He argues that In re Rosenkrantz (2002) 29 Cal.4th 616, 654, 128 Cal.Rptr.2d 104, 59 P.3d 174held that there was a statutory presumption in favor of parole based on the "shall/unless" language in section 3041. Section 3041 states that the board "shall set a release date [for the inmate] unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting." (§ 3041, subd. (b).)
*1184 To an extent, we disagree with defendant's interpretation of Rosenkrantz and section 3041. The statutes and regulations governing parole create a presumption in favor of parole in part because of the Legislature's conclusion that those prisoners who have served their minimum parole eligibility terms are "normally" entitled to a parole date unless parole poses an unreasonable risk to public safety. (§ 3041, subd. (a).) Therefore, we disagree with defendant's interpretation that Rosenkrantz concluded that, by itself, the "shall/unless" construction used in section 3041 created a presumption in favor of parole.
Additionally, we find that defendant's interpretation of the "shall/unless" statutory construction was recently rejected by our Supreme Court in People v. Gutierrez (2014) 58 Cal.4th 1354, 171 Cal.Rptr.3d 421, 324 P.3d 245, which analyzed similar language located in section 190.5, the juvenile life without parole statute. The Gutierrez court stated: "Contrary to [People v. Guinn (1994) 28 Cal.App.4th 1130, 33 Cal.Rptr.2d 791], ... our review of the text and history of section 190.5[, subdivision] (b) does not lead us to conclude that the statute establishes a presumption in favor of life without parole. The text of the statute appears ambiguous on this point. As noted, section 190.5[, subdivision] (b) says the penalty for special circumstance murder committed by a 16- or 17-year-old offender 'shall be confinement in the state prison for life without the possibility of parole or, at the discretion of the court, 25 years to life.' It is not unreasonable to read this text, as Guinn did, to mean that a court 'shall' impose life without parole unless 'at the discretion of the court' a sentence of 25 years to life appears more appropriate. [Citation.]
*425 But it is equally reasonable to read the text to mean that a court may select one of the two penalties in the exercise of its discretion, with no presumption in favor of one or the other. The latter reading accords with common usage. For example, if a teacher informed her students that 'you must take a final exam or, at your discretion, write a term paper,' it would be reasonable for the students to believe they were equally free to pursue either option. The text of section 190.5 [, subdivision] (b) does not clearly indicate whether the statute was intended to make life without parole the presumptive sentence." (Id. at p. 1371, 171 Cal.Rptr.3d 421, 324 P.3d 245.)
We find that Gutierrez 's interpretation of section 190.5's syntax is equally applicable to section 1170.126, subdivision (f)'s syntax. We therefore disagree with defendant's interpretation that the "shall/unless" construction used in section 1170.126, subdivision (f)creates a presumption in favor of resentencing. It is true that a court faced with an eligible petition for resentencing is required to resentence the petitioner unless it finds doing so would pose an unreasonable risk of danger to public safety. However, the inclusion of the word "shall" and "unless" in the statute in no way means that a trial court's discretion to find that a petitioner would be dangerous to public safety is somehow circumscribed so that it can only find dangerousness in *1185 limited, extraordinary circumstances. Rather, we find that the statutory language of section 1170.126merely reinforces that a trial court is vested with the discretion to either resentence a petitioner or conclude a petitioner poses an unreasonable risk of danger based on the totality of the circumstances presented in each particular case.
Nonetheless, defendant persists in his claim that section 1170.126creates a presumption in favor of resentencing. He insists that a hearing on a section 1170.126petition is essentially the converse of a Romero[3] hearing and therefore establishes that a court may only deviate from the newly established "norm" of a second-strike sentence in extraordinary cases when there is proof of current dangerousness.
In People v. Carmony (2004) 33 Cal.4th 367, 14 Cal.Rptr.3d 880, 92 P.3d 369, our Supreme Court discussed the legislative purpose behind the three strikes law and the standards sentencing courts should follow in order to determine whether to strike or vacate a prior strike. It noted that "the three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." (Id. at p. 378, 14 Cal.Rptr.3d 880, 92 P.3d 369.)
As the Fifth Appellate District explained in People v. Blakely (2014) 225 Cal.App.4th 1042, 171 Cal.Rptr.3d 70(Blakely ), "[t]he purpose of the three strikes law has been variously stated as being ' "to ensure longer prison sentences and greater punishment for those who commit a felony and have been previously convicted of serious and/or violent felony offenses" ' [citation] and 'to promote the state's compelling interest in the protection of public safety and in punishing recidivism' [citation]. Although the [Reform] Act 'diluted' the three strikes law somewhat [citation], '[e]nhancing *426 public safety was a key purpose of the [Reform] Act.' " (Id. at p. 1054, 171 Cal.Rptr.3d 70.)
Since public safety remains the key focus of the Reform Act, we disagree with defendant's assertion that a decision on a section 1170.126petition must be subjected to the same scrutiny as a Romero hearing. A section 1170.126petition is not the converse of a Romero hearing since section 1170.126does not establish a new sentencing norm.
Additionally, we reject defendant's claim that the trial court should deny an eligible petition for resentencing only in extraordinary cases. This would *1186 undermine the intent of the voters in passing the Reform Act-to preserve public safety. The trial court was not required to find that defendant was "outside the spirit" of the Reform Act before it could find that resentencing him would pose an unreasonable risk of danger to public safety.
c. Abuse of Discretion to Deny Petition
Next, we address defendant's claim that the trial court erred when it denied his petition.
Whether a defendant poses an unreasonable risk of danger to public safety is a discretionary decision made by the trial court based on the facts presented in the case. However, the facts considered by the trial court must be established by the People by a preponderance of the evidence.
On appeal, we review the court's finding of an unreasonable risk of danger for an abuse of discretion. However, we apply a substantial evidence standard of review to the facts supporting the court's finding. In other words, a factor relied on by the court that is not supported by a preponderance of the evidence cannot form the basis of the court's determination. (People v. Cluff (2001) 87 Cal.App.4th 991, 998, 105 Cal.Rptr.2d 80[holding that a trial court abuses its discretion when its factual findings are not supported in the record].) With this framework in mind, we do not believe the trial court abused its discretion when it declined to resentence defendant.
When making its dangerousness determination, the court focused on defendant's history of violence, which included the incidents of violence that had occurred while defendant was incarcerated. During the hearing, Danielle Arlanda Harris testified as an expert on criminology and recidivism. Harris stated that a recent study had concluded that inmates who were 55 years of age were considered elderly and recidivism reduces with age. The court, taking Harris' testimony into account, noted that defendant's age may reduce his risk of violence. However, the court was concerned with defendant's history of violent altercations while incarcerated. In 2004, he struck another inmate with a broomstick and was found guilty of battery on an inmate with a weapon. In 2007, he was found guilty of mutual combat. In 2009, he was found guilty of fighting resulting in the use of force. All of these incidents occurred when defendant was already considered elderly according to Harris' testimony, since he was almost 55 years old at the time of the incident in 2004. Yet, the court noted that defendant's age had not eliminated his problem with violence.
Further, the court was concerned with the lack of information regarding the programming defendant participated in while in prison. Earlier, the People *1187 had raised concerns with the lack of information regarding defendant's participation in programs to gain insight into substance abuse or anger management, which the court *427 believed were some of the most troubling areas of concern in defendant's case.
"The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (Shamblin v. Brattain (1988) 44 Cal.3d 474, 478-479, 243 Cal.Rptr. 902, 749 P.2d 339.) The court made its determination that resentencing defendant would pose an unreasonable risk of danger to public safety based on appropriate factors that are supported by substantial evidence. Accordingly, we find that it did not abuse its discretion in coming to this conclusion.
Essentially, defendant argues that the court erred because it did not accord certain factors the weight he believes they deserve, such as the remoteness of his prior crimes, his participation in education classes, and the fact that some of his prior altercations in prison involved self defense. We disagree. Simply because defendant does not agree with the court's conclusion does not mean the court abused its discretion. And, since the court's decision is rationally supported by factual findings that are in turn supported by sufficient evidence, our inquiry must end. Even though there were factors that tended to weigh in favor of resentencing defendant, it was ultimately up to the trial court to determine whether defendant would pose an unreasonable risk of danger to public safety if resentenced. Defendant essentially urges us to reweigh the evidence, which is not our role as the appellate court.
We also disagree with defendant's assertion that the court must take into consideration the fiscal drain on the state's resources that will be incurred due to his continuing incarceration. We fail to see how monetary considerations should factor into a court's determination that resentencing an inmate will pose an unreasonable risk of danger to public safety. Saving money is one of the Reform Act's stated goals. However, the primary purpose of both the three strikes law and Reform Act is to protect public safety. (People v. Osuna (2014) 225 Cal.App.4th 1020, 1036-1037, 171 Cal.Rptr.3d 55.) Therefore, the trial court was not required to weigh the potential to reduce costs by releasing inmates like defendant. In essence, the electorate already conducted its own cost-benefit analysis by determining that those inmates whose resentencing would pose an unreasonable risk of danger to public safety should not be released, even if resentencing may provide some savings to the state.
*1188 2. Right to a Jury Trial
Next, defendant argues that due process requires that a determination of dangerousness be made by a jury and be proved beyond a reasonable doubt. He claims the court erred when it implicitly denied his request for a jury trial.
The Second Appellate District addressed this issue in People v. Superior Court (Kaulick ) (2013) 215 Cal.App.4th 1279, 155 Cal.Rptr.3d 856(Kaulick ), which determined that the prosecution must establish dangerousness by preponderance of the evidence, not by proof beyond a reasonable doubt.[4] (Id. at pp. 1301-1305, 155 Cal.Rptr.3d 856.)
*428 We agree with the reasoning set forth in Kaulick. The United States Supreme Court has held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (Apprendi v. New Jersey (2000) 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435.)
In Kaulick, the appellate court noted that the maximum sentence that Kaulick was subject to was, and will always be, an indeterminate life term. (Kaulick, supra, 215 Cal.App.4th at p. 1303, 155 Cal.Rptr.3d 856.) And, although the Reform Act "presents [Kaulick] with an opportunity to be resentenced to a lesser term, unless certain facts are established, he is nonetheless still subject to the third strike sentence based on the facts established at the time he was originally sentenced. As such, a court's discretionary decision to decline to modify the sentence in his favor can be based on any otherwise appropriate factor (i.e., dangerousness), and such factor need not be established by proof beyond a reasonable doubt to a jury." (Ibid. )
Kaulick relied on Dillon v. United States (2010) 560 U.S. 817, 130 S.Ct. 2683, 177 L.Ed.2d 271. In Dillon, the court considered whether a two-step sentence modification procedure implicated the Sixth Amendment. (Id. at pp. 826-829, 130 S.Ct. 2683.) If eligible for a sentence modification, a reduction in the defendant's sentence could be ordered. (Id. at pp. 826-827, 130 S.Ct. 2683.) Dillon concluded that "a defendant's Sixth Amendment right to have essential facts found by a jury beyond a reasonable doubt do not apply to limits on downward sentence modifications due to intervening laws." (Kaulick, supra, 215 Cal.App.4th at p. 1304, 155 Cal.Rptr.3d 856.) Kaulick found Dillon 's rationale to be equally applicable to the Reform Act, since "[t]he retrospective part of the [Reform] Act is not constitutionally required, but an act of lenity on the part *1189 of the electorate." (Ibid. ) The resentencing scheme is not plenary; it provides for a proceeding where the original indeterminate life term can be modified downward. Kaulick concluded that this did not implicate any Sixth Amendment rights.
We follow Kaulick and find that there is no requirement that the dangerousness finding be established beyond a reasonable doubt. Accordingly, we conclude the trial court did not err in denying defendant's motion for a jury trial, because a Sixth Amendment right to a jury trial does not arise in a petition for resentencing under section 1170.126, subdivision (f).
3. Supplemental Probation Report
Defendant claims the court should have obtained a supplemental probation report prior to denying his petition for resentencing. Defendant argues that a supplemental probation report was necessary, because the decision to resentence him is functionally the equivalent of a decision to place him on probation. Defendant has forfeited this argument. He did not request a supplemental probation report below, nor did he object to proceeding without one.
Defendant claims his lack of objection does not waive or forfeit his claim, citing to People v. Dobbins (2005) 127 Cal.App.4th 176, 178, 24 Cal.Rptr.3d 882(Dobbins ). However, Dobbins is inapplicable, because the defendant there remained eligible for probation upon remand. (Id . at pp. 181-182, 24 Cal.Rptr.3d 882.) Therefore, a probation report was mandated by law, unless a written or oral stipulation was entered by the prosecuting and defense attorneys. (§ 1203, subd. (b)(4).) Since the *429 attorneys did not waive or stipulate to proceed without the probation report, the Dobbins defendant did not forfeit his claim of error even though he failed to object below. (Dobbins,supra, at p. 182, 24 Cal.Rptr.3d 882.)
Unlike Dobbins, defendant would not have been eligible for probation as a second-strike offender. (§§ 667, subd. (c)(2), 1170.12, subd. (a)(2); People v. Johnson (1999) 70 Cal.App.4th 1429, 1431-1432, 83 Cal.Rptr.2d 423.) Therefore, a waiver or stipulation to proceed without a probation report was not required below. Accordingly, defendant's failure to request a supplemental probation report or object to its omission forfeits his claim on appeal. (People v. Murray (2012) 203 Cal.App.4th 277, 289, fn. 12, 136 Cal.Rptr.3d 820, overruled on another point in People v. Gutierrez,supra, 58 Cal.4th 1354, 171 Cal.Rptr.3d 421, 324 P.3d 245; People v. Johnson, supra, at pp. 1431-1432, 83 Cal.Rptr.2d 423.)
Regardless, we would reject defendant's contention even if we were to consider it on the merits. The Fifth Appellate District considered and rejected *1190 a similar argument in People v. Franco (2014) 232 Cal.App.4th 831, 181 Cal.Rptr.3d 778(Franco ), and we agree with the Franco court's reasoning.
As we previously discussed, when a defendant is convicted of a felony and is eligible for probation, referral of the matter to the probation officer for an investigation and report is mandatory. (§ 1203, subd. (b)(1); Cal. Rules of Court, rule 4.411(a).) However, referral for a report is discretionary when a defendant is ineligible for probation, except when the amount of a restitution fine must be calculated. (§ 1203, subd. (g); Cal. Rules of Court, rule 4.411(b).)
Since defendant would not have been eligible for probation even if he was resentenced as a second strike offender, "neither statute nor rule of court required the trial court to obtain a supplemental report." (Franco,supra, 232 Cal.App.4th at p. 834, 181 Cal.Rptr.3d 778.) Like the Franco court, we "decline to impose a mandatory duty on the trial court where the statutes and rules of court granting authority for probation reports do not so provide."[5] (Id . at p. 835, 181 Cal.Rptr.3d 778.)
4. The Definition of an "Unreasonable Risk of Danger to Public Safety"
Lastly, defendant argues in his supplemental brief that Proposition 47's definition of an "unreasonable risk of danger to public safety" should be applied to the Reform Act.
a. Background
In November 2012, voters enacted section 1170.126as part of the Reform Act. (People v. Yearwood (2013) 213 Cal.App.4th 161, 167, 151 Cal.Rptr.3d 901.) As discussed above, section 1170.126, subdivision (f)specifies that a petitioner shall be resentenced unless "the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." Section 1170.126does not contain a definition of the phrase "unreasonable risk of danger to public safety," but does include a nonexclusive list of criteria a court may consider in making a determination of dangerousness. (§ 1170.126, subd. (g).)
Two years later in November 2014, voters enacted Proposition 47, the "Safe Neighborhoods and Schools Act." The Legislative Analyst described Proposition 47 as having three main functions: reducing *430 penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes, allowing certain offenders previously convicted of such crimes to apply for reduced sentences, and requiring state savings resulting from the measure be *1191 spent to support various services.[6] (Voter Information Guide, Gen. Elec. (Nov. 4, 2014) analysis of Prop. 47 by Legis. Analyst, p. 35.)
Proposition 47 does not mention the Reform Act. However, it did establish procedures for certain offenders to apply for a reduced sentence. Section 1170.18, subdivision (a) provides that defendants convicted of certain nonserious, nonviolent property and drug felonies can file a petition requesting resentencing. A court that receives the petition shall resentence the petitioner "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).)
Pertinent here, section 1170.18, subdivision (c) provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667."
b. Analysis
Defendant argues the narrow definition of an unreasonable risk of danger to public safety set forth in section 1170.18, subdivision (c), enacted by Proposition 47, applies to the phrase as used in section 1170.126, enacted by the Reform Act.[7] We disagree.
"We recognize the basic principle of statutory and constitutional construction which mandates that courts, in construing a measure, not undertake to rewrite its unambiguous language. [Citation.] That rule is not applied, however, when it appears clear that a word has been erroneously used, and a judicial correction will best carry out the intent of the adopting body." (People v. Skinner (1985) 39 Cal.3d 765, 775, 217 Cal.Rptr. 685, 704 P.2d 752.) Whether the use of a word is the result of a drafting error "can only be determined by reference to the purpose of the section and the intent of the electorate in adopting it." (Id. at p. 776, 217 Cal.Rptr. 685, 704 P.2d 752.)
We hold that if we examine the intent of the electorate in passing Proposition 47, we are compelled to conclude that the word "Code" in section 1170.18, subdivision (c) was erroneously used in place of the word "Act," to *1192 refer to the Safe Neighborhoods and Schools Act. There is nothing to indicate that in passing Proposition 47 the electorate intended to modify or change the Reform Act in any way.
Defendant disagrees and argues that it is clear from the language of sections 1170.18and 1170.126that the electorate intended to modify section 1170.126. Defendant opines that both propositions sought to improve public safety. And, defendant claims that the plain language of Proposition 47 unambiguously applies the definition of an unreasonable risk *431 of danger to public safety to the Reform Act. Furthermore, when Proposition 47 was enacted, the only other instance in the Penal Code where the phrase "unreasonable risk of danger to public safety" was used was in the Reform Act.
We find defendant's arguments unpersuasive. None of the materials accompanying Proposition 47 contain any reference to the Reform Act. For example, the Voter Information Guide to Proposition 47 states that "[t]his measure reduces penalties for certain offenders convicted of nonserious and nonviolent property and drug crimes. The measure also allows certain offenders who have been previously convicted of such crimes to apply for reduced sentences. In addition, the measure requires any state savings that result from the measure be spent to support truancy (unexcused absences) prevention, mental health and substance abuse treatment, and victim services." (Voter Information Guide, Gen. Elec., supra, analysis of Prop. 47 by Legis. Analyst, p. 35.) The Legislative Analyst then detailed the changes that would be made if Proposition 47 was passed. None of these changes included redefining the meaning of the phrase "unreasonable risk of danger to public safety" in the Reform Act.
In fact, there was no mention of reforming the three strikes law in any of the official ballot materials accompanying Proposition 47. Nothing in the official ballot materials reflects that Proposition 47 was intended to have an impact on offenders who did not commit the specified nonserious, nonviolent property or drug crimes described in Proposition 47. The ballot materials indicate that the thrust of the initiative was to reduce these less serious felonies to misdemeanors. Further, the ballot materials emphasize that the resentencing provisions set forth in Proposition 47 were limited to those individuals serving sentences for the specified nonserious, nonviolent drug or property crimes.
The dissent takes the position that we should not confine ourselves to the official ballot materials when ascertaining the voter's intent. In his reply brief, defendant cites to several different Web sites where opponents of Proposition 47 authored written arguments against passing Proposition 47. (See, e.g., *1193 The Alliance for a Safer California, Prop 47 Facts < http://www.votenoprop47.org/No_On_Prop_47_Facts.html> (as of ______).) These arguments contemplate that Proposition 47's definition of an "unreasonable risk of danger to public safety" may alter the definition used in the Reform Act. Unlike defendant and the dissent, we are not convinced that these Web sites, which are beyond the legislative analysis and the official ballot arguments that are distributed to all voters in the state, are indicative of the electorate's intent. Although a court may consider extrinsic aids such as statements to the voters on initiative and referendum measures (Rich v. State Board of Optometry (1965) 235 Cal.App.2d 591, 603, 45 Cal.Rptr. 512) when determining intent, it is unclear how widely disseminated these arguments were prior to the election and if the electorate was even aware of these arguments before they voted Proposition 47 into law.[8]
The dissent notes that the official ballot materials are limited by considerations of time and space. We agree that "[b]allot arguments are not legal briefs and are not expected to cite every case the proposition may affect." ( *432 Santa Clara County Local Transportation Authority v. Guardino (1995) 11 Cal.4th 220, 237, 45 Cal.Rptr.2d 207, 902 P.2d 225.) Further, the official summary prepared by the Legislative Analyst need not describe every way the enacted measure may change the law. "The analysis may contain background information, including the effect of the measure on existing law and the effect of enacted legislation which will become effective if the measure is adopted, and shall generally set forth in an impartial manner the information the average voter needs to adequately understand the measure." (Elec.Code, § 9087.)
Here, the ballot summary is completely devoid of any mention of the Reform Act or the three strikes law. We cannot take the dissent's position that the Legislative Analyst likely failed to mention Proposition 47's purported effect on the Reform Act because it believed it was likely to matter less to voters, or that it was an auxiliary issue. If in fact one of the purposes of Proposition 47 was to provide a new definition of an "unreasonable risk of danger to public safety" in the Reform Act-essentially rewriting the standard by which three strikes resentencing petitions are heard and decided by the trial court-that should certainly be "information the average voter needs to adequately understand the measure." (Elec.Code, § 9087.)
Defendant argues that Proposition 47 is merely a continuation of the sentencing reform initiated by the electorate, which includes the reforms *1194 initiated by the Reform Act. Further, defendant explains that the drafters and electorate who endorsed Proposition 47 may have reasonably determined that the strict definition of an "unreasonable risk of danger to public safety" was a necessary correction to the Reform Act. He claims the lack of a restrictive definition in the Reform Act led to trial courts resentencing petitions under section 1170.126too cautiously based on the "natural human tendency to over predict violence and err on the side of further imprisonment."
Defendant's arguments on this point are purely based on conjecture. Despite his claim that Proposition 47 can logically be seen as a way to correct the restrictive use of resentencing employed by the trial courts under the Reform Act, there is actually no evidence that this was conceived or even considered by the electorate. Proposition 47's ballot materials discuss reforming current sentencing laws by reducing certain nonserious, nonviolent felonies to misdemeanors, not by reforming the three strikes law which had already been reformed just a few years earlier.
We are also unconvinced with defendant's claim that the Reform Act and Proposition 47 are in pari materi (on the same subject or relating to the same matter), rendering it so that similar phrases should be given the same meaning. (See People v. Caudillo (1978) 21 Cal.3d 562, 585, 146 Cal.Rptr. 859, 580 P.2d 274, overruled on another point in People v. Martinez (1999) 20 Cal.4th 225, 229, 237, fn. 6, 83 Cal.Rptr.2d 533, 973 P.2d 512and disapproved of on another ground in People v. Escobar (1992) 3 Cal.4th 740, 749-751, fn. 5, 12 Cal.Rptr.2d 586, 837 P.2d 1100.) Proposition 47 and the Reform Act had different overarching goals, despite their shared effect of reforming criminal sentencing laws.
On the one hand, both the Reform Act and Proposition 47 emphasized public safety and are both targeted at changing the way criminal defendants are sentenced. However, the uncodified section 7 of the Reform Act states that the "act is an exercise of the public power of the people of the State of California for the protection of the health, safety, and welfare of the people of the State of California, and shall be *433 liberally construed to effectuate those purposes." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) text of Prop. 36 proposed law, § 7, p. 110.) Proposition 47, on the other hand, emphasized the potential for fiscal savings if passed. In its findings and declarations, it states: "The people of the State of California find and declare as follows: [¶] The people enact the Safe Neighborhoods and Schools Act to ensure that prison spending is focused on violent and serious offenses, to maximize alternatives for nonserious, nonviolent crime, and to invest the savings generated from this act into prevention and support programs in K-12 schools, victim services, and mental health and drug treatment." (Voter Information Guide, Gen. Elec., supra, text of Prop. 47 proposed law, § 2, p. 70.) These two acts are not in pari materi. *1195 Further, defendant's claim that one of the authors of Proposition 47 has seemingly taken the position that Proposition 47's definition of an "unreasonable risk of danger to public safety" extends to the Reform Act is beside the point. The author's intent is irrelevant. "In construing a statute we do not consider the objective of an authoring legislator when there is no reliable indication that the Legislature as a whole was aware of that objective and believed the language of the proposal would accomplish it." (Calvillo-Silva v. Home Grocery (1998) 19 Cal.4th 714, 726-727, 80 Cal.Rptr.2d 506, 968 P.2d 65.) Here, based on the ballot materials there is no indication the electorate was aware, or even considered the possibility, that Proposition 47 would alter the Reform Act. We cannot infer that the electorate somehow had this intent.
There are also practical reasons for us to conclude that Proposition 47 contains a drafting error. For example, the Reform Act requires that petitions for resentencing be brought within two years of its passage unless the trial court concludes the existence of good cause for filing a late petition. (§ 1170.126, subd. (b).) By the time Proposition 47 took effect, the two-year period for filing a petition under section 1170.126was nearly over. It is illogical to conclude that Proposition 47 was meant to modify the Reform Act when most of the three strike resentencing petitions were already adjudicated and decided by that time.
The language of section 1170.18also lends support to our conclusion. Section 1170.18specifically provides that, "Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act." (§ 1170.18, subd. (n).) Applying the definition of "unreasonable risk of danger to public safety" from section 1170.18to section 1170.126, would undoubtedly diminish the finality of those three strikes judgments that do not involve a nonserious, nonviolent property or drug crime.
Lastly, our conclusion does not render the phrase "[a]s used throughout this Code" in section 1170.18meaningless surplusage. The general rule is that "statutes are to be construed to give meaningful effect to all of their provisions, and to avoid rendering any language superfluous." (Planned Parenthood Affiliates v. Van de Kamp (1986) 181 Cal.App.3d 245, 270, 226 Cal.Rptr. 361.) Based on the foregoing, we conclude that section 1170.18, subdivision (c)contains a drafting error that must be judicially corrected. Under a corrected reading of the statute, we find that the word "Code" must be read as "Act." Therefore, the phrase would read "[a]s used throughout this Act," meaning Proposition 47.
*1196 Accordingly, we find no merit in defendant's argument that the order denying his *434 petition must be reversed.[9]
DISPOSITION
The order denying defendant's petition for recall of sentence is affirmed.
I CONCUR:
Elia, J.

Unspecified statutory references are to the Penal Code.

The court did not explicitly rule on defendant's request for a jury trial. However, since it held a hearing on the matter without a jury, it implicitly denied defendant's request.

People v. Superior Court (Romero ) (1996) 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628.

The Fifth Appellate District concurred with Kaulick 's conclusion in Blakely, supra, 225 Cal.App.4th 1042, 171 Cal.Rptr.3d 70.

Based on this conclusion, we need not address defendant's claim of prejudice.

We take judicial notice of the text of Proposition 47 and its accompanying ballot materials. (Evid.Code, §§ 452, 459.)

This issue is currently pending review in the California Supreme Court in People v. Valencia (2014) 232 Cal.App.4th 514, 181 Cal.Rptr.3d 229 (review granted Feb. 18, 2015, S223825).

Further, we note that case law indicates that it may be improper to rely on articles when determining voter intent. (Californians for Political Reform Foundation v. Fair Political Practices Com. (1998) 61 Cal.App.4th 472, 485, 71 Cal.Rptr.2d 606.) However, it appears that in the past, our Supreme Court has indeed relied on such articles when ascertaining the electorate's intent. (California Housing Finance Agency v. Patitucci (1978) 22 Cal.3d 171, 178, 148 Cal.Rptr. 875, 583 P.2d 729.)

Based on our conclusion that Proposition 47's definition of an "unreasonable risk of danger to public safety" is inapplicable to section 1170.126, we need not address defendant's claim regarding the retroactivity of that definition. That issue is also currently pending review in the California Supreme Court. (People v. Chaney (2014) 231 Cal.App.4th 1391, 180 Cal.Rptr.3d 443, review granted Feb. 18, 2015, S223676.)