Filed 5/19/16  P. v. Campos CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SASHA CAMPOS,<br><br>    Defendant and Appellant. | B265831<br><br>(Los Angeles County<br>Super. Ct. No. BA159653) |

APPEAL from an order of the Superior Court of Los Angeles County. Rand S. Rubin, Judge.  Affirmed.

Rich Pfeiffer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Noah P. Hill and David E. Madeo, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Sasha Campos (defendant) appeals the trial court's order denying his petition for resentencing under Proposition 36, the Three Strikes Reform Act of 2012 (Proposition 36). On appeal, he argues that the court (1) erred in not applying the definition of "unreasonable risk of danger to public safety" enacted as part of Proposition 47, the Safe Neighborhoods and Schools Act (Proposition 47), and (2) abused its discretion in concluding that he posed such an unreasonable risk. Although the first issue is pending before our Supreme Court,[1] we conclude that Proposition 47's definition does not apply to Proposition 36 and that the court did not abuse its discretion in finding that defendant was not suitable for resentencing. We accordingly affirm.

## FACTS AND PROCEDURAL BACKGROUND

In 1997, defendant was carrying a box that contained 451 individually wrapped rocks of cocaine and a bag with 127 individually wrapped rocks of cocaine and powder cocaine; the gross weight of these narcotics was 99.52 grams. Defendant was on parole at the time.

Defendant was charged, tried, and convicted of (1) possessing cocaine base for sale (Health & Saf. Code, § 11351.5), and (2) possessing for sale a controlled substance (*id.*, § 11351). The jury also found true the allegation that he possessed more than 14.25 grams of cocaine. At the time of these convictions, defendant had already been convicted of two "strikes" within the meaning of California's Three Strikes law (Pen. Code, §§ 1170.12, subds. (a)-(d) & 667, subds. (b)-(i))—namely, a 1993 conviction for attempted first-degree burglary (Pen. Code, §§ 664 & 459) and a 1994 conviction for second-degree robbery (Pen. Code, § 211). Because the 1997 offenses were felonies, and thus "third strikes" under the then-existing Three Strikes law, the trial court imposed a

---

[1]     See *People v. Chaney* (2014) 231 Cal.App.4th 1391, review granted, S223676; *People v. Valencia* (2014) 232 Cal.App.4th 514, review granted, S223825; *People v. Guzman* (2015) 235 Cal.App.4th 847, review granted, S226410; *People v. Davis* (2015) 234 Cal.App.4th 1001, review granted, S225603; *People v. Sledge* (2015) 235 Cal.App.4th 1191, review granted, S226449.

third-strike sentence of 25 years to life on the first count and a second, concurrent sentence of 25 years to life on the second count.

Defendant has been in prison since 1997. Although his security classification was a 40 (out of 100, with 100 being most dangerous) when he arrived in 1997, it had been adjusted to a 78 by 2012. This was due to his misconduct in prison. He violated institutional rules on a number of occasions: He delayed a peace officer in 2001 by disobeying a "lock down" order; he refused to report to his prison job for 18 days in 2003; and he was declared "out of bounds" in 2004 because he was in a building that was off limits to him. He destroyed state property: In 2005, he shattered the window in his cell by drilling a small hole in it. He attempted to import drugs and alcohol into the prison: In 2001, he had a telephone conversation with a woman who said she would mail him a "quarterly package," told her he liked Baby Ruth candy bars, and discussed how to reseal their wrappers; nine days later, a package arrived addressed to his cellmate that contained marijuana and nine balloons of powder methamphetamine secreted inside individually wrapped Baby Ruth candy bars. In 2004, he brewed his own alcohol, got drunk with his cell mate, got into a fight with him and proceeded to "trash" the contents of their cell. He also got into fist fights with other inmates in 2008, 2012, and 2013; in the 2008 fight, he broke his opponent's jaw and knocked out one of his opponent's teeth.

In December 2012, defendant petitioned the trial court to be resentenced under the newly enacted Proposition 36. The trial court entertained further briefing, and held a hearing on whether defendant posed an "unreasonable risk of danger to public safety."

The trial court ultimately issued a 12-page written ruling. The court determined that defendant was eligible for relief under Proposition 36 because his drug convictions were not "serious" or "violent" felonies, but found that "[t]he preponderance of the evidence demonstrates that [defendant] does pose an unreasonable risk of danger to public safety at this time." In analyzing risk, the court examined the factors cited in Proposition 36—namely, defendant's criminal history, his disciplinary history and record of rehabilitation while in prison, and any other evidence. (Pen. Code, § 1170.126, subd. (g).) The court noted that defendant "has a lengthy history of committing multiple

3

crimes when free from custody, even when on parole." In addition to the drug convictions and the two prior strikes, defendant had a 1992 felony conviction for selling cocaine (Health & Saf. Code, § 11352), a 1994 felony conviction for receiving stolen property (Pen. Code, § 496, sub. (a)), and several misdemeanor convictions. The court next observed that defendant's "disciplinary history reflects a pattern of violent conduct, drug trafficking, substance abuse, and an unwillingness to follow institutional rules." The court further found "scant evidence that [defendant] has made any serious or meaningful attempts to rehabilitate himself," citing his lack of involvement in any rehabilitation programs until *after* he filed his Proposition 36 petition; the timing of defendant's efforts left the court with "little confidence that [defendant] would participate in re-entry programs to reduce his chances of recidivism if he were released into the community." The court lastly noted that defendant offered "no evidence of his post-release plans"; such plans were important, the court reasoned, because defendant's "history of recidivism, violent conduct, and substance abuse" meant he would "need comprehensive re-entry services in order to help him not only adapt to life in the community, but to avoid re-offending."

Defendant timely appeals this ruling.

## DISCUSSION

Defendant argues that the trial court's order is flawed for two reasons: (1) the court did not use the definition of "unreasonable risk of danger to public safety" adopted by the voters in Proposition 47; and (2) the court erred in its evaluation of the danger he posed, even under Proposition 36's standards. The first issue is one of statutory construction, and our review is de novo. (*People v. Prunty* (2015) 62 Cal.4th 59, 71.) The evaluation of risk in the second issue is entrusted to the trial court's discretion (§ 1170.126, subd. (f)), so we review its determination only for an abuse of discretion. (*People v. Florez* (2016) 245 Cal.App.4th 1176, 1186 (*Florez*).)

4

# I. Does Proposition 47's Definition of "Unreasonable Risk of Danger to Public Safety" Apply to Proposition 36?

## A. *Background*

Until 2012, California's Three Strikes law required a trial court to impose a minimum sentence of 25 years to life for a defendant convicted of a felony—no matter what the felony—if he or she had been previously convicted of two prior "serious" or "violent" felonies (so-called "strikes"). (Former §§ 1170.12, subd. (c)(2)(A) & 667, subd. (e)(2)(A).) In 2012, the voters passed Proposition 36. The Proposition modifies the Three Strikes law so that the minimum 25-year-to-life sentence may in most cases only be imposed on third or subsequent felony conviction if that conviction is also a serious or violent felony.[2] (§§ 1170.12, subd. (c)(2)(C) & 667, subd. (e)(2)(C).) The Proposition also grants defendants *previously* sentenced on a nonserious and nonviolent felony to a 25-year-to-life sentence under the Three Strikes law the right to petition for resentencing on that offense. (§ 1170.126, subd. (b).)

Whether defendant is entitled to resentencing (and, thus to an earlier release) under Proposition 36 turns on (1) whether he is eligible for relief, and, if so, (2) whether he is suitable for relief—that is, whether "resentencing the [defendant] would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In assessing a defendant's suitability, Proposition 36 directs a court to "consider": (1) the defendant's "criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes"; (2) the defendant's "disciplinary record and record of rehabilitation while incarcerated"; and (3) "[a]ny other evidence the court, within its discretion, determines to be relevant in

---

[2] Proposition 36's new rule is not without exception: *Some* nonserious and nonviolent felonies, when committed as a "third strike," will still trigger a minimum 25-year-to-life sentence. (§§ 1170.12, subd. (c)(2)(C), 667, subd. (e)(2)(C), 1170.126, subd. (e)(2).) However, none of these exceptions is at issue in this case.

deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (*Id.*, subd. (g).)

Two years and two days after enacting Proposition 36, the voters enacted Proposition 47. (§§ 1170.126 (effective Nov. 7, 2012), 1170.18, (effective Nov. 5, 2014).) Proposition 47 redesignates as misdemeanors "certain drug- and theft-related offenses" that were charged as felonies or charged as "wobblers" (that is, offenses that are punishable as a felony until a court reduces them to a misdemeanor) and ultimately sentenced as felonies.[3] (*People v. Lynall* (2015) 233 Cal.App.4th 1102, 1108.) Among other things, Proposition 47 empowers "[a] person currently serving a sentence for a conviction" to "petition for a recall of sentence." (§ 1170.18, subd. (a).) Similar to Proposition 36, a court evaluating whether to recall a sentence under Proposition 47 must assess (1) whether "the petitioner" is eligible for relief under Proposition 47, and (2) whether "resentencing the petitioner would pose an unreasonable risk of danger to public safety." (*Id.*, subd. (b).) Although Proposition 47 urges a court to consider the same three types of evidence as Proposition 36 (*ibid.*), Proposition 47 substantially narrows the scope of the court's inquiry into suitability. Specifically, Proposition 47 provides: "As used throughout this Code, 'unreasonable risk of danger to public safety' means an unreasonable risk that the petitioner will commit a new violent felony within the meaning of" subdivision (e)(2)(C)(iv) of section 667. (*Id.*, subd. (c).) In other words, rather than focus on whether the petitioner poses an "unreasonable risk of danger to public safety" *generally*, a court evaluating a Proposition 47 petition is to assess only whether there is an "unreasonable risk that the petitioner will commit" one of a handful of particularly egregious "violent" felonies that are often referred to "super strikes."[4] (*Id.*, subd. (c).)

---

[3] Proposition 47 redesignated as misdemeanors the crimes defined in Health and Safety Code sections 11350, 11357, and 11377 and in Penal Code sections 459.5, 473, 476a, 490.2, 496, and 666. (§ 1170.18, subd. (b).)

[4] Those offenses include (1) a "sexually violent offense" (as defined in Welfare and Institutions Code section 6600), (2) oral copulation, sodomy, or sexual penetration with a

6

### B.    Analysis

The question of whether Proposition 47's narrower definition of "unreasonable risk of danger to public safety" applies when a trial court is evaluating a Proposition 36 petition is currently pending before our Supreme Court. (See *ante*, fn. 1 [listing pending cases].) There are four published Court of Appeals decisions on this issue, and three of them conclude that Proposition 47's definition does *not* apply. (*People v. Myers* (2016) 245 Cal.App.4th 794, 801 (*Myers*); *Florez*, *supra*, 245 Cal.App.4th at pp. 1186-1187; *People v. Esparza* (2015) 242 Cal.App.4th 726, 736-737 (*Esparza*).) The fourth comes to the contrary conclusion, albeit with a dissent. (*People v. Valdez* (April 28, 2016) 2016 Cal.App.Lexis 343, 20-31.) We are persuaded by the reasoning expressed by the majority view, and join that majority in its conclusion.

As these cases acknowledge, the plain text of the Proposition 47's definition of "unreasonable risk of danger to public safety" points to the conclusion that it applies to Proposition 36. Proposition 47 expressly provides that its narrower definition is to be "used throughout this *Code*," and Proposition 36 is codified at section 1170.126 of the Penal Code. In construing statues, we always start with their plain text. (*California Charter Schools Assn. v. Los Angeles Unified School Dist.* (2015) 60 Cal.4th 1221, 1237.) However, the text does not control if it is ambiguous, if it leads to an absurd result, or if it is inconsistent with the Legislature's (or, as to propositions, the voters') apparent intent. (*Ibid.*; *Burquet v. Brumbaugh* (2014) 223 Cal.App.4th 1140, 1145-1146; cf. *In re Gabriel G.* (2005) 134 Cal.App.4th 1428, 1437 ["(e)vidence of legislative inadvertence would have to be quite compelling before we would ignore the plain

child under the age of 14 when the defendant is 24 or older (in violation of Penal Code sections 288a, 286, or 289), (3) a lewd or lascivious act involving a child under the age of 14 (in violation of Penal Code section 288), (4) homicides and attempted homicides (in violation of Penal Code sections 187 through 191.5), (5) soliciting murder (in violation of Penal Code section 653f), (6) assault with a machine gun on a peace officer or firefighter (in violation of Penal Code section 245), (7) possessing a weapon of mass destruction (in violation of Penal Code section 11418, subdivision (a)), and (8) any other serious or violent felony punishable by life imprisonment or death. (§ 667, subd. (e)(2)(C)(iv).)

language of the law"].) Our overarching goal is "'"to ascertain the intent of the lawmakers so as to effectuate the purpose of the law"'" (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1176), so we must "'"'select the construction that comports most closely with the apparent intent of the Legislature, with a view toward promoting rather than defeating the general purpose of the statute.'"'" (*Burquet*, at p. 1146).

Although there is nothing ambiguous about Proposition 47's use of the word "Code," we nevertheless agree with *Myers*, *Florez* and *Esparza* that there are several compelling reasons to conclude that the voters did not intend Proposition 47's definition to apply to the inquiry into suitability under Proposition 36.

To begin, other portions of Proposition 47's text strongly suggest that its definition of "unreasonable risk of danger to public safety" was not meant to extend beyond Proposition 47 itself. Subdivision (n) states: "Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act." (§ 1170.18, subd. (n).) However, if a court evaluating a Proposition 36 petition must grant that petition unless it finds a unreasonable risk that a defendant will commit a "super strike" (rather than a risk of danger to public safety more generally), the finality of that judgment is "diminished" by Proposition 47's definition. (Accord, *Myers*, *supra*, 245 Cal.App.4th at pp. 804-805.) Along similar lines, Proposition 47 uses the term "petitioner" in conjunction with "this section" or "this act" (§ 1170.18, subds. (a), (b), (j), (l), (m)); subdivision (c)'s use of the word "petitioner" suggests a similar limitation to the reach of Proposition 47's definition of "unreasonable risk of danger to public safety." (Accord, *Myers*, at pp. 804-805; *Esparza*, *supra*, 242 Cal.App.4th at p. 737.)

Further, nothing in the legislative history of Proposition 47 suggests (or, for that matter, even hints) that it was intended to alter the scope of Proposition 36's inquiry into suitability. Neither the text of Proposition 47 nor its ballot materials say anything about Proposition 36 or about exporting Proposition 47's newly minted definition of "unreasonable risk of danger to public safety" to other resentencing schemes. (§ 1170.18; Voter Information Guide, Gen. Elec. (Nov. 4, 2014)); see generally *People v.*

8

*Mosley* (2015) 60 Cal.4th 1044, 1073 [looking to ballot summaries and arguments in assessing voters' intent].)  Although Proposition 47 and Proposition 36 "are similar in structure," "contain similar remedial resentencing provisions," and are both aimed at saving money (*People v. Rouse* (2016) 245 Cal.App.4th 292, 298; *People v. Rivas-Colon* (2015) 241 Cal.App.4th 444, 452, fn. 4; *Florez*, *supra*, 245 Cal.App.4th at p. 1194), they have "different overarching goals" (*Florez*, at p. 1194).  Proposition 47 is designed to give lower-level criminals who have committed a "nonserious and nonviolent property" offense a reduced sentence (Voter Information Guide, at p. 35), while Proposition 36 is designed to give hardened criminals with at least two prior serious or violent convictions a reduced sentence on their third felony (from 25 to life down to double the usual sentence) (§ 1170.126).  These are different purposes.  (*Florez*, at p. 1194; *Myers*, *supra*, 245 Cal.App.4th at pp. 802-803.)

Lastly, the timing of Proposition 47's enactment is inconsistent with an intent to apply it to Proposition 36 petitions.  Proposition 36 gave defendants "two years" from its enactment to file their petitions for resentencing.  (§ 1170.126, subd. (b).)  Proposition 47 was enacted two days shy of the closing of that window.  (§ 1170.18.)  It "seem[s] unlikely that any rational voter would have intended to change the rules for Proposition 36 petitions at the last moment, when nearly all petitions would already have been filed and most of them had already been adjudicated."  (*Myers*, *supra*, 245 Cal.App.4th at p. 804; *Florez*, *supra*, 245 Cal.App.4th at p. 1195; *Esparza*, *supra*, 242 Cal.App.4th at p. 757.)

For all these reasons, we decline to apply Proposition 47's definition of "unreasonable risk of danger to public safety" to Proposition 36.

## II.     Did the Trial Court Abuse Its Discretion In Determining That Defendant Posed An "Unreasonable Risk of Danger to Public Safety?"

In its detailed order, the trial court considered each of the three categories of evidence outlined in section 1170.126, subdivision (g); weighed them; and ultimately concluded that defendant's criminal history, disciplinary history, lack of rehabilitation

9

and absence of re-entry plans indicated that he poses an unreasonable risk of danger to public safety.

Defendant levels five challenges at the trial court's reasoning. First, he argues that the court did not evaluate whether defendant *currently* poses an unreasonable risk to public safety. We disagree. The court recognized that its task was to assess "current[] risk," and explained why defendant's criminal history and disciplinary history translated to a current risk—namely, his criminal history reflected a current risk because his "prior incarcerations failed to dissuade him from continuing to reoffend in the community" and his "[s]erious rules violations in prison constitute powerful evidence of [his] current willingness to engage in serious rule-breaking behavior and are probative of recidivist tendencies and the danger to public safety."

Second, defendant asserts that the trial court erred in looking to *all* of the charges against him rather than just the ones of which he was convicted. In 1994, defendant was charged with two counts of second-degree robbery involving his use of an Uzi, one for confronting a man on the street and the other for demanding money from a restaurant hostess. Although it is unclear from the record we have on appeal to which of these robberies defendant pled guilty, it is of no consequence because *both* of them constitute "[a]ny other evidence the court . . . determines to be relevant" in assessing risk. (§ 1170.126, subd. (g)(3).)

Third, defendant argues that the trial court should not have relied on several of the prison disciplinary findings because they were subject to mitigating factors or were unsupported by sufficient evidence. More specifically, defendant contends that all three of the fights were "mutual combat," and that there was insufficient evidence to tie him to the drugs found in the Baby Ruth wrappers because they were addressed to his cellmate. Whether or not these findings are "final" for purposes of res judicata, they are "relevant" evidence in assessing his risk of re-offending. (§ 1170.126, subd. (g)(3).)

Fourth, defendant contends that many of his disciplinary proceedings occurred while he was part of the mental health delivery system. That is true, but also irrelevant in

10

light of the repeated findings that his "mental state was not a factor influencing his misbehavior."

Lastly, defendant claims that the trial court erred in placing any weight on his failure to participate in any rehabilitative programs while in prison until after he filed his Proposition 36 petition because he was not in a facility that offered those programs between 2004 and 2014.  However, the court stated that "the relevant question" in assessing future risk "is not *why* [defendant] did not program, but *whether* he programmed."  Moreover, defendant offered no evidence to support his argument that any and all rehabilitative programs were unavailable.

**DISPOSITION**

The order denying relief under Proposition 36 is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

_____, J.
HOFFSTADT

We concur:

_____, P.J.
BOREN

_____, J.
CHAVEZ

12